346 F.2d 270
 John J. OLING, David J. Landry, on behalf of themselves and
all other 'second officers' in the employ of the
United Air Lines, Inc. similarly
situated, Plaintiffs-Appellants,
v.
AIR LINE PILOTS ASSOCIATION, and United Air Lines, Inc.,
Defendants-Appellees.
 No. 14914.
 United States Court of Appeals Seventh Circuit.
 June 4, 1965.
 
 O. David Zimring, I. J. Gromfine, H. Sternstein, William B. Peer, Chicago, Ill., for plaintiffs-appellants. Zimring, Gromfine & Sternstein, Washington, D.C., of counsel.
 Stuart Bernstein, Chicago, Ill., Herbert A. Levy, New York City, Robert Plotkin, Arthur J. Kowitt, Chicago, Ill., for defendant, United Air Lines, Inc. Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.
 Before DUFFY, CASTLE and MAJOR, Circuit Judges.
 MAJOR, Circuit Judge.
 
 
 1
 This action was brought for injunctive relief, alleging conduct by befendants in violation of the Railway Labor Act (45 U.S.C.A. 151 et seq.), and for damages suffered by plaintiffs as a consequence thereof. On September 29, 1964, United Air Lines, Inc. (United) filed a motion, supported by affidavit and brief, to dismiss the complaint 'for lack of jurisdiction and for failure of plaintiffs to state a claim upon which relief could be granted.' Plaintiffs filed a brief and affidavits in opposition thereto. The District Court, by order dated November 16, 1964, granted defendants' motion to dismiss. From this order plaintiffs appeal.
 
 
 2
 Defendant United is a common carrier by air, engaged in interstate and foreign commerce, and is subject to the provisions of the Railway Labor Act (the Railway Act) and the Federal Aviation Act (49 U.S.C.A. 1301 et seq.) (the Aviation Act). Defendant Air Line Pilots Association (ALPA) has at all times since May 31, 1961 been the certified bargaining representative at United for a single craft or class of employees, consisting of all members of the flight deck crew, including pilots, co-pilots and flight engineers. Prior to May 31, 1961, ALPA represented only the pilots and co-pilots at United, the flight engineers being separately represented by the UNA Chapter, Flight Engineers International Association, AFL-CIO (FEIA). On January 17, 1961, the National Mediation Board (NMB) decided that United's entire flight deck crew constituted a single craft or class for purposes of collective bargaining under the Railway Act.[1] Thereupon, ALPA was elected and later certified as the representative of that craft or class.
 
 
 3
 Plaintiffs Oling and Landry, on behalf of themselves and others similarly situated, allegedly represent a group of about 233 employees of United who are classed as 'second officers,' which classification refers to those flight deck crew members who perform the work of a 'flight engineer.' They comprise only a portion of such officers in the employ of United. Prior to 1961, the second officers had been represented for collective bargaining with United by FEIA in a bargaining unit confined to flight engineers. Plaintiffs had been members and officers of that union. ALPA had been the bargaining representative of the pilots (or 'captains') and co-pilots (or 'first officers'). A controversy had long existed between plaintiffs and ALPA as to the proper representation of the former, which culminated in the decision of NMB above noted. Thus, while as a result of that decision ALPA became the exclusive bargaining representative of all pilots, co-pilots and flight engineers in the employ of United, including plaintiffs, the latter refused to become members.
 
 
 4
 Capital Air Lines, Inc. (Capital) was also an air carrier subject to the provisions of the Railway Act and the Aviation Act. All of Capital's pilots, copilots and flight engineers were represented by ALPA for purposes of collective bargaining.
 
 
 5
 On August 11, 1960, United and Capital entered into an agreement by the terms of which Capital was to be merged into United. The agreement was subject to approval by the Civil Aeronautics Board (CAB or the Board), and upon execution of the agreement proceedings were commenced by United to obtain CAB approval. CAB, after hearing and pursuant to Sec. 408 of the Aviation Act (49 U.S.C.A. 1378), entered an order dated April 3, 1961, approving the merger. This order was later affirmed by the Court of Appeals for the District of Columbia, Northwest Air Lines, Inc. et al. v. CAB et al., 112 U.S.App.D.C. 384, 303 F.2d 395.
 
 
 6
 Included in the terms of the merger order were a number of labor protective provisions ordinarily imposed by CAB upon a surviving carrier to protect employees. against possible adverse effects resulting from the merger. Sec. 3 of such provisions (pertaining to seniority integration) provided:
 
 
 7
 'Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.'
 
 
 8
 Section 13 provides that in the event of the failure of the parties to agree, the controversy 'may be referred by either party, to an arbitration committee for consideration and determination.' CAB reserved jurisdiction 'to make such amendments, modifications and additions to the labor protective conditions imposed by paragraph 2(c) above as circumstances may require.'
 
 
 9
 On June 1, 1961, the effective date of the merger, the employees of Capital became those of United, with ALPA as the duly certified bargaining unit. Following approval of the merger, ALPA began to implement its own established procedures for formulating an integrated seniority list for all flight deck personnel on the merged carrier. Pursuant to these procedures, representatives were chosen by ALPA from among the employees at each of the affected airlines for the purpose of compiling a single seniority list. Such representatives were unable to resolve their differences concerning seniority integration through negotiation and mediation, and the matters in question were submitted to arbitration in accordance with the procedure set forth in ALPA's Policy Manual.
 
 
 10
 Two arbitration proceedings were held, the first before an arbitration board headed by Harry Abrahams (the Abrahams arbitration) and the second before an arbitration board headed by David L. Cole (the Cole arbitration). United was not a party to either of these proceedings. The Abrahams award established a seniority integration list for the employees of United, including those employed by Capital previous to the merger, but the matter of integrating United flight engineers into the seniority list was left for determination by the Cole arbitration as ALPA had not been certified as their representative until subsequent to the commencement of the seniority integration procedures.
 
 
 11
 The award of the Cole arbitration, issued on August 24, 1962, resolved the seniority status of United's flight engineers, respecting their bidding rights to the pilot and co-pilot seats on United aircraft. The award stated:
 
 
 12
 'There are really three points of view presented at our hearings-- (1) those of the Capital group, (2) the United pilots and second officers, and (3) that of a group of older flight engineers who have opposed affiliation with ALPA over the years, (and who have opposed) * * * all moves designed to blend the flight engineer and pilot functions into one category. These are referred to as the career flight engineers, some 244 in number.'
 
 
 13
 The third group, referred to as the 'career flight engineers,' are those allegedly represented by plaintiffs in this proceeding. They presented their views to the Cole board through their representatives, who made opening and closing arguments and submitted written statements as evidence. In essence, their position was that they were entitled to full seniority credit as pilots for time spent as flight engineers when they had no seniority rights to piloting positions. The Cole board rejected their contentions and stated its reasons therefor, concluding as follows:
 
 
 14
 'For these reasons I shall fully protect the rights of the professional flight engineers to the third seat assignments, but I see no equitable basis for placing them on the pilot seniority list ahead of others already on the list or clearly entitled to be on list.'
 
 
 15
 In the period following the arbitration proceedings plaintiffs protested to United that the awards as they related to seniority were unfair and should not be agreed to. However, in June 1963, United and ALPA executed an agreement embodying the awards. The complaint alleged that United accepted without challenge the resolution of the seniority issue.
 
 
 16
 On November 27, 1963, plaintiffs petitioned CAB to set aside and vacate the integrated seniority list and for other relief, in an effort to obtain their claimed additional seniority rights. They alleged that the Board's jurisdiction to grant such relief was predicated on Sec. 408 of the Aviation Act, upon the Board's own reservation of jurisdiction in the merger order to amend, modify or add to the labor protective provisions 'as circumstances may require,' and upon its labor protective provision directing the 'integration of seniority lists in a fair and equitable manner * * *.'
 
 
 17
 The petition prayed that CAB open the United-Capital merger case for a hearing respecting petitioners' claim that United and ALPA had failed to integrate seniority 'in a fair and equitable manner'; vacate the integrated seniority list agreed to between United and ALPA on June 11, 1963; order United and ALPA to refrain from giving effect to that list, and require that petitioners be given the same credit toward pilot and co-pilot seats as all other members of the flight deck crew.
 
 
 18
 CAB, on April 24, 1964, gave consideration to the contentions of the parties and to the documentary evidence, including the text of the Abrahams and Cole arbitration awards, and entered an order dismissing plaintiffs' petition. In the order it was stated, 'We find no support in the pleadings before us for the relief petitioners request * * *.' The Board rejected not only the ultimate request for relief but plaintiffs' factual allegations, upon which relief was sought. Thereupon, plaintiffs, without appealing from such order, commenced the instant proceedings, alleging violations of the Railway Act.
 
 
 19
 While the parties in their briefs set forth the contested issues in different phraseology, we think they are adequately covered in United's brief as follows:
 
 
 20
 'Was the district court correct in dismissing the complaint for lack of jurisdiction and for failure to state a claim upon which relief could be granted either because: (a) The subject matter of the complaint was before the C.A.B. on a petition filed by plaintiffs and the decision rendered by the C.A.B. with respect thereto could only be reviewed by a United States Court of Appeals in accordance with the statutory review procedures prescribed by the Federal Aviation Act; or (b) The C.A.B. had exclusive jurisdiction under the Federal Aviation Act over the subject matter of the complaint thereby immunizing defendants' conduct from the operation of all other laws including the Railway Labor Act.'
 
 
 21
 The jurisdiction of CAB over seniority integration is derived from its merger approval authority under Sec. 408 of the Aviation Act. Although there is no express mention in that section of the Board's authority to prescribe either labor protective conditions or seniority integration procedures, it does provide that CAB shall approve mergers and other related transactions 'upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe * * * unless the Board finds that the * * * merger * * * will not be consistent with the public interest'.
 
 
 22
 We do not understand that plaintiffs challenge the Board's jurisdiction or its authority with respect to the seniority integration provision embodied in its order. Therefore, we cite without extended discussion only some of the cases which sustain that jurisdiction and authority. United States et al. v. Lowden et al., 308 U.S. 225, 238, 60 S.Ct. 248, 84 L.Ed. 208; Western Air Lines, Inc. v. Civil Aeronautics Board, 9 Cir., 194 F.2d 211, 213-214; Kent v. Civil Aeronautics Board, 2 Cir., 204 F.2d 263, 265; Outland et al. v. Civil Aeronautics Board, D.C.Cir., 284 F.2d 224, 228, and Brotherhood of Locomotive Engineers v. Chicago and North Western Railway Co., 8 Cir., 314 F.2d 424, 429.
 
 
 23
 Not only have the courts consistently held that the Board has the jurisdiction and authority to impose labor protective provisions, including that for seniority integration, as a condition of merger approval but, in Kent, the reviewing court sustained the authority of the Board to formulate its own integrated seniority list. In doing so it stated (page 265 of 204 F.2d):
 
 
 24
 'Industrial strife may arise by reason of a dispute between the two or more employee groups as to how a unified seniority list should be drawn. And when such a dispute develops, it is within the power of the Board to order the carrier to follow whatever course is necessary and appropriate. An overall supervision of the merging carrier so as to protect adequately the public interest is what Sec. 408(b) of the Act contemplates, and that is what these orders accomplish. The same power to order the initial integration justifies the Board's further requirement that the employer refrain from making any labor contract in the future which will not conform to it.'
 
 
 25
 Thus, we have a situation where the Board acting within its jurisdiction and authority gave its approval to the merger upon condition that certain labor protective provisions be complied with, including that pertaining to seniority integration as provided by the Cole arbitration and as agreed to by United and ALPA.
 
 
 26
 Title 49 U.S.C.A. 1486, provides in material part:
 
 
 27
 '(a) Any order, affirmative or negative, issued by the Board or Administrator under this chapter * * * shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, filed * * * by any person disclosing a substantial interest in such order.
 
 
 28
 '(d) Upon transmittal of the petition to the Board or Administrator, the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board or Administrator.
 
 
 29
 '(f) The judgment and decree of the court affirming, modifying, or setting aside any such order of the Board or Administrator shall be subject only to review by the Supreme Court of the United States * * *.'
 
 
 30
 Thus, plaintiffs under this statute were afforded a right to appeal to a United States Court of Appeals for a review of the proceedings by which the seniority list was prepared and accepted by the Board. If they had done so, that Court would have acquired exclusive jurisdiction to consider and determine the merits, if any, of petitioners' assault on the Board's proceedings.
 
 
 31
 Plaintiffs, now met with the contention that they are not entitled to maintain the present suit because of failure to exhaust their statutory and administrative remedies, state that before bringing the instant suit to remedy the discrimination, and other Railway Act violations, they exhausted their administrative remedies by filing 'a petition with the Civil Aeronautics Board seeking relief under the employee protective conditions of the Board's order approving the merger * * *.' However, no reason, much less excuse, is assigned for their failure to seek review of the Board's order in accordance with their statutory right.
 
 
 32
 The cases firmly establish the principle that where Congress has provided a statutory procedure for the review of an administrative order, such procedure is exclusive. A recent case much in point is Whitney National Bank v. Bank of New Orleans & Trust Co. et al., 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386. That case involved the Bank Holding Company Act, 12 U.S.C.A. 1842(a), particularly Sec. 1848, which provided a statutory procedure for review similar to that in the instant case. Plaintiffs, instead of relying upon such procedure, sought relief in an independent action which the Supreme Court denied. The Court stated (page 420, 85 S.Ct. page 557):
 
 
 33
 '* * * where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive. See, e.g., Callanan Road Improvement Co. v. United States, 345 U.S. 507 (73 S.Ct. 803, 97 L.Ed. 1206) (1953); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41 (58 S.Ct. 459, 82 L.Ed. 638) (1938); Texas & Pac. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 (27 S.Ct. 350, 51 L.Ed. 553) (1907). Congress has set out in the Bank Holding Company Act of 1956 a carefully planned and comprehensive method for challenging Board determinations. That action by Congress was designed to permit an agency, expert in banking matters, to explore and pass on the ramifications of a proposed bank holding company arrangement. To permit a district court to make the initial determination of a plan's propriety would substantially decrease the effectiveness of the statutory design.'
 
 
 34
 The instant case is even stronger against plaintiffs on the point under discussion because here the statute lodges 'exclusive jurisdiction' in the reviewing court while in Whitney such jurisdiction was found by implication.
 
 
 35
 Another case much in point is Holman et al. v. Southern Airways, Inc., 5 Cir., 210 F.Supp. 407, wherein the District Court dismissed the complaint and denied the relief requested on the ground that the suit, couched in the terms of a violation of petitioners' contract rights and of their right to fair representation, was in reality an attempt to review a CAB order. Among other things the Court stated (page 410):
 
 
 36
 'This Court is convinced that it does not have jurisdiction to grant the plaintiffs the relief they seek, inasmuch as jurisdiction to review orders of the Civil Aeronautics Board is vested exclusively in the Circuit Courts of Appeals.'
 
 On the following page the Court stated:
 
 37
 'It seems to this Cuurt that if the plaintiffs are dissatisfied with the order of the Board, they could, pursuant to the provisions of 49 U.S.C.A. 1486, of the Civil Aeronautics Act, procure a judicial review of the order * * *. * * * However, in the face of the expressed intention of the Congress to vest exclusive jurisdiction in the various Courts of Appeals to review orders of the Civil Aeronautics Board, this Court feels that any relief, injunctive or otherwise, must be had either from such Courts of Appeals or from the administrative agency in whose jurisdiction the proceedings originated-- in this case, the Civil Aeronautics Board.'
 
 
 38
 We need not cite other cases which sustain the proposition that CAB has been entrusted by Congress with the power to make determinations affecting the protection of employees in merger cases, including the integration of seniority lists. The CAB has made such a determination here. In plain disregard of the express terms of Sec. 1006 of the Federal Aviation Act which prescribes a direct and exclusive method of review, plaintiffs instituted the present action in derogation of the well settled principle that collateral attacks upon administrative orders are not permissible. See City of Tacoma v. Taxpayers of Tacoma et al., 357 U.S. 320, 334-337, 78 S.Ct. 1209, 2 L.Ed.2d 1345; Callanan Road Improvement Co. v. United States et al., 345 U.S. 507, 512-513, 73 S.Ct. 803; Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co., 258 U.S. 377, 381-382, 42 S.Ct. 349, 66 L.Ed. 671.
 
 
 39
 Plaintiffs make a strenuous but unsuccessful effort to extricate themselves from their present predicament, which rises from the fact that after invoking the jurisdiction of CAB and obtaining an adverse decision, they failed to pursue their statutory remedy for review. Plaintiffs in their brief state:
 
 
 40
 'The claims placed before the Court in the instant suit are broader and different from anything the plaintiffs had placed before the CAB while exercising their responsibility to exhaust all administrative remedies before instituting this suit. (As shown, they failed to pursue their statutory right to review.) The CAB did not have jurisdiction to deal with those claims, and could not, under any circumstances, have provided the kind of relief which plaintiffs must have in order to remedy the Railway Labor Act violations here involved, and which is available to them in a suit in a federal district court.'
 
 
 41
 Plaintiffs assert in their reply brief, 'No order has been issued by the CAB which would be negated by the relief plaintiffs here seek.' A comparison of the record before the CAB as to the relief there sought with that which they now seek by their complaint demonstrates that this statement is clearly erroneous. True, there are some allegations in the complaint not made in plaintiffs' petition before the Board, but in essence they are the same, although in some instances couched in different phraseology.
 
 
 42
 A detailed comparison of the two instruments would unduly burden this opinion. We shall thus confine the comparison to some of the more salient features. Plaintiffs in their brief state:
 
 
 43
 'One of the principal claims raised by plaintiffs in the complaint is the claim that ALPA has violated the Railway Labor Act (45 U.S.C.A 151, et seq.) by failing in its statutory duty of fair representation, by discriminating against plaintiffs, because of their allegiance to FEIA and for other invidious considerations, in the negotiating of their seniority, wages, and working conditions. As a concomitant of this claim, plaintiffs claim that United has also violated the Railway Labor Act by entering into agreements with ALPA knowing that those agreements contain terms which were the product of invidious discrimination against plaintiffs.'
 
 
 44
 In their petition before the Board they alleged that 'United has failed to integrate the seniority of its employees and the former Capital employees in a fair and equitable manner by refusing to accord petitioners credit for service performed, which service has been credited other employees similarly situated'; that 'United has invidiously discriminated against petitioners as a class and has caused petitioners to suffer irreparable injury'; that 'ALPA has willfully failed to perform its statutory duty as a collective bargaining agent of representing petitioners, a minority of its members, fairly and without prejudice,' and that 'United and ALPA have acted in bad faith and in a deliberate effort to subvert an order of the Civil Aeronautics Board which requires integration of seniority in a fair and equitable manner, by discriminatorily distinguishing between petitioners and all other members of the bargaining unit.'
 
 
 45
 The close similarity between the charges made before the Board and those in the instant complaint are apparent. And even more important, the thrust of the relief sought before the Board, as in the instant suit, rests on the premise that the seniority integration approved by the Board was not accomplished 'in a fair and equitable manner.' The Board found that it was so accomplished and rejected plaintiffs' contentions that United attempted to 'subvert' the Board's merger order, that United 'invidiously discriminated against petitioners as a class,' and that ALPA 'willfully failed to perform its statutory duty as collective bargaining agent.'
 
 
 46
 Even more important in comparing the two actions is the request for relief. Before the Board, petitioners requested that it 'set aside and vacate the integrated seniority list agreed to between United and ALPA on June 11, 1963,' and order them 'to cease and desist giving effect in any manner whatsoever to said integrated list.' In the complaint, among other things plaintiffs request the Court 'to issue an order declaring null and void and unenforcible in any and all respects Pilots' System Seniority List presently in effect on United, and enjoining ALPA and United from giving effect in any manner whatever to that list.'
 
 
 47
 It can hardly be doubted but that the heart of plaintiffs' contention before the Board, as well as in its complaint, is their request for relief from what they claim was their unfair listing relative to seniority rights. Other allegations in their complaint are merely subsidiary to and offered in support of that principal claim.
 
 
 48
 The conclusion is inescapable that plaintiffs sought a review of the final order entered by CAB on April 24, 1964. Stated otherwise, their action constitutes a collateral attack upon such order. As we have shown, this is not permissible under the law. For this reason the District Court properly dismissed the complaint. Such being our conclusion, we do not reach the issue as to whether the CAB had exclusive jurisdiction, as argued by defendants, or concurrent jurisdiction, as argued by plaintiffs. In any event, its jurisdiction was invoked and pursued by plaintiffs to the point of an adverse decision, and they failed to seek relief therefrom by a review in the manner provided by Congress.
 
 The order appealed from is
 
 49
 Affirmed.
 
 
 
 [1]
 This decision was upheld by the Court of Appeals for the District of Columbia, UNA Chapter, FEIA v. NMB, 111 U.S.App.D.C. 121, 294 F.2d 905