**T. J. HYLAND et al., Plaintiffs,**

**v.**

**UNITED AIR LINES, INC., et al.,
Defendants.**

**No. 65 C 1506.**

United States District Court
N. D. Illinois, E. D.

May 26, 1966.

368

Thomas A. Mass, Jr., Chicago, Ill., and Stephen C. Vladeck, Vladeck, Elias, Frankle & Vladeck, New York City, for plaintiffs.

Stuart Bernstein, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for United Air Lines, Inc.

Howard R. Koven, Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, Irving M. Friedman, Katz & Friedman, Chicago, Ill., and Cohen & Weiss, New York City, for ALPA.

DECKER, District Judge.

This suit for injunction, declaratory judgment and damages is still another chapter in an eleven-year odyssey pursued by a group of United Air Lines ("United") pilots and co-pilots in search of improved seniority positions. Other chapters have been written before neutral arbitrators, United States District Courts, United States Courts of Appeals and the Civil Aeronautics Board ("CAB"). Plaintiffs have lost every attempt; a careful review of the extensive briefs, pleadings and exhibits before me conclusively shows that plaintiffs must lose again.

The flight deck crew of a commercial airliner consists of three men: a pilot or captain, a co-pilot or "first officer," and a flight enginer or "second officer." The flight engineer was a post-war innovation, not required by federal government regulation until December 1, 1948. When this requirement for a specially trained second officer was imposed, United met it by adding a third person to the flight deck crew: a co-pilot who also qualified as a flight engineer. Shortly afterward, in April, 1949, in response to pressure from the Flight Engineers International Association ("FEIA") and for financial reasons, United dropped the requirement that its flight engineers be qualified pilots. For a period of five years, until February, 1954, United hired and used flight engineers upon whom the requirement of pilot training was not imposed. United reinstated this requirement in 1954 and has maintained it ever since.

Plaintiffs were hired by United as pilots and co-pilots between 1946 and 1948. In 1948, they were furloughed from these jobs and hired as flight engineers. Although they were qualified as pilots, for the greater part of the time they served United as flight engineers until 1954, they held positions for which pilot training was not required. Their collective bargaining representative while they were flight engineers was the FEIA.

In 1954, plaintiffs accepted employment with United as co-pilots, and they have been serving as pilots or co-pilots ever since, with the Air Line Pilots Association ("ALPA") as their collective bargaining representative. Plaintiffs were placed at the bottom of the 1955 pilot seniority list; they had not been given seniority credit for the time they had spent as flight engineers between

1949 and 1954. Thirty-three of the forty-one plaintiffs here (together with others), known as the "Vanlehn Group," filed grievances, which were denied by United. Subsequent challenges in District Courts, before a System Board and the Tenth Circuit Court of Appeals failed to overturn the 1955 list.

Plaintiffs' relative position remained unchanged on the 1957 pilot seniority list, and, after it was posted, thirty-two of them again filed grievances and unsuccessfully pursued their claim through the United States District Court in this District and the Seventh Circuit Court of Appeals. The 1957 list stood unchanged.

In 1961, two events occurred which gave members of the Vanlehn group a new peg upon which to hang their claim that their service as flight engineers should have been counted in drawing up the seniority lists. First, pursuant to a determination by the National Mediation Board ("NMB") that all three members of the flight deck crew constituted a single collective bargaining craft, the ALPA was certified as the bargaining agent for the entire crew on May 31, 1961. Second, pursuant to agreement on August 11, 1960, and the CAB approval on April 3, 1961, United Air Lines and Capital Airlines merged on June 1, 1961.

Following the merger, the ALPA contained two groups of men who had served as flight engineers at some time in the past under similar circumstances: the Vanlehn group and the similarly situated group among Capital Airlines employees. One critical difference distinguished the two groups: Capital flight engineers had always been required to be qualified as pilots, whereas the Vanlehn group was not subject to this requirement from 1949 to 1954. Among the many other problems of seniority integration facing the ALPA following the merger was the evaluation of the relative claims of the Vanlehn group and the Capital group.

Post-merger seniority lists were ultimately drawn by internal arbitration boards headed by outside neutrals. In effect, each seniority list was the product of the best judgment of a neutral arbitrator. Two separate proceedings were pursued. The first arbitration board, headed by neutral Harry Abrahams integrated the seniority lists of the two airlines except for the career flight engineers, a group of flight deck men who were flight engineers at the time of the merger. Plaintiffs were placed on the list by the Abrahams award. The second award, by the panel headed by neutral David L. Cole, resolved the seniority status of the career flight engineers and did not directly affect plaintiffs' rights.

The integrated seniority list created by the Abrahams and Cole arbitration was adopted by United and the ALPA in a collective bargaining agreement ("Agreement") on June 11, 1963. The Agreement also contained a new definition of the word pilot which included within its scope the position of flight engineer in accordance with the NMB ruling. The new seniority provision of the Agreement, in addition to adopting the Abrahams-Cole list, provided that "pilot seniority shall accrue from the first date of first assignment to the airline as a pilot * * *." With adoption of this Agreement, the stage was set for two separate but related challenges to the seniority list.

In the order approving the merger, United-Capital Merger Case, 33 CAB 307, 342 (1961), the CAB imposed labor protective provisions, which in relevant part provided as follows:

"Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13."

Four pages of small print accompanying the order contained detailed labor provisions, and the CAB further provided as follows:

"That jurisdiction is hereby reserved to make such amendments, modifica-

tions, and additions to the protective labor conditions imposed by paragraph 2(c) above as circumstances may require."

Invoking the CAB's reservation of jurisdiction, the career flight engineers whose positions had been established by the Cole arbitration, petitioned the CAB to avoid the integrated seniority list on the ground that it violated the terms of the merger order in that it was not "fair and equitable." They also alleged that the ALPA had wilfully discriminated against them and violated its duty of fair representation. The CAB dismissed the petition, finding both asserted grounds without merit. The career flight engineers then filed suit in District Court in this District, charging the ALPA with violating its duty of fair representation. The suit was dismissed and the Seventh Circuit Court of Appeals affirmed. Oling v. Air Lines Pilot Ass'n, et al., 346 F.2d 270 (7th Cir. 1965), cert. denied 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965).

Having observed the fate of the flight engineers before the CAB, plaintiffs chose a different route of challenge. Although they warned the CAB by letter that they, too, might some day invoke the reservation of jurisdiction in the same manner as the career flight engineers, plaintiffs proceeded to employ the internal grievance arbitration machinery of the union through a System Board of Adjustment headed by neutral member Dr. Mark L. Kahn. Upon losing there, they filed this suit to enjoin use of the integrated seniority list, to declare it null and void and to obtain damages to make them whole for their incorrect seniority position since the merger. Other related relief is also sought.

Plaintiffs seek relief on two grounds. First, in Count I of the complaint, the ALPA is charged with violating its duty as a collective bargaining agent under the Railway Labor Act by discriminating against plaintiffs. The alleged discrimination is to be found in the execution of an agreement in which plaintiffs were deprived of seniority rights "on the basis of considerations that are irrelevant and unfair." United, which is alleged to have surrendered its power over seniority to the ALPA, is charged with the ALPA with acting "in bad faith and in a deliberate effort to subvert national labor policy which requires integration of seniority in a fair and equitable manner."

Count II charges the System Adjustment Board, the grievance arbitrator which heard that part of plaintiffs' claim based on construction of the Agreement, with exceeding its authority by amending and altering the meaning of the Agreement. The core of Count II is also that the seniority list is wrong, but the Count II claim is based on the very language of the Agreement, rather than the acts of the ALPA or United.

Defendants' motion to dismiss initially argues that the CAB has exclusive jurisdiction of the controversy. Defendants further argue that plaintiffs have not stated a claim upon which relief can be granted. The parties have agreed on the facts.

I.

The Aviation Act contains an exclusive jurisdiction provision in § 414 (49 U.S.C. § 1384):

"Any person affected by any order made under sections 1378, 1379, or 1382 of this title shall be, and is hereby, relieved from the operations of the 'antitrust laws', as designated in section 12 of Title 15, and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order."

The United-Capital merger was approved in an order under § 408 of the Act (49 U.S.C. § 1378), subject to certain provisions. United-Capital Merger Case, 33 CAB 307 (1961).

The doctrine of exclusive jurisdiction under the Aviation Act was considered in Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963), in which the Court held that the CAB has exclusive control

over questions of limitation of routes and divisions of territories and the relation of common carriers to air carriers. Questions such as these were held to be immune to anti-trust law attack even though the CAB's authority over at least some of these questions is derived from § 411 of the Act, which does not find specific exemption in § 414.

The Court based its decision on several traditional exclusive jurisdiction arguments. The matters in issue were held to be "basic in this regulatory scheme." The Court said that "[t]he acts charged in this civil suit as antitrust violations are precise ingredients of the Board's authority in granting, qualifying, or denying certificates to air carriers * *." 371 U.S. at 305, 83 S.Ct. at 482. The Court was concerned with the fact that "[i]f the courts were to intrude independently with their construction of the antitrust laws, two regimes might collide." 371 U.S. at 310, 83 S.Ct. at 485. "It would be strange, indeed, if a division of territories or an allocation of routes which met the requirements of the 'public interest' as defined in § 2 [of the Aviation Act] were held to be anti-trust violations. It would also be odd to conclude that an affiliation between a common carrier and an air carrier that passed muster under § 408 should run afoul of the antitrust laws." 371 U.S. at 309, 83 S.Ct. at 484.

The law of Pan American was considered in Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964), cert. dismissed 380 U.S. 248, 249, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965), in which the owner of TWA's major corporate stockholder was charged with anti-trust law violations and malicious injury to TWA. The charges were based on dealings between defendant's wholly owned corporation and TWA and involved restrictions imposed upon TWA's purchases of new aircraft. The defense of exclusive jurisdiction in the CAB was rejected by the court following an analysis of the substantial differences between Pan American and the case before it. While in Pan American the anti-trust suit dealt directly with matters within the explicit powers of the CAB, in Hughes the transactions complained of were "unrelated to any specific function of the CAB." The court explained its decision as follows:

"The board is explicitly entrusted with the duty of considering for approval any potential acquisition of control over an air carrier by a person engaged in any phase of aeronautics; and to the extent of such approval—but only to that extent—the Act grants immunity from the operation of the antitrust laws. Surely Congress did not contemplate that CAB approval of an acquisition would be tantamount to approval of every transaction which might be entered into by the controlling party. The focus of the Board's powers in this sphere is the acquisition itself rather than the broad range of activities into which the controller may enter thereafter." Id., 332 F.2d at 608.

Applying the law of § 414 and Pan American, the question is whether the charges in this complaint are of the type which only the CAB can hear. The Seventh Circuit explicitly reserved judgment on this question in Oling v. Air Line Pilots Ass'n, 346 F.2d 270, 278 (7th Cir. 1965), as did the CAB in Delta-C & S Seniority List, 29 CAB 1347, 1350 (1959). I hold that the matters raised here are within the exclusive jurisdiction of the CAB.

Count I of the complaint focuses on the United-Capital merger. Charges are directed at alleged misbehavior of United and ALPA in formulating and approving the integrated pilot seniority list which was drawn up after the merger. Defendants are charged with failing to integrate the lists in a "fair and equitable manner." The Agreement which the plaintiffs consider unfair is the one providing for the integrated list. The prayer for relief asks that the integrated list be declared null and void, that this court impose conditions which any new list must meet, and that damages be awarded to compensate plaintiffs for their loss of position under the integrated list. Defendants are

charged with improper action in resolving merger-created labor problems.

■■ The CAB clearly has jurisdiction over seniority integration, among other labor matters, when it approves an airline merger. Oling v. Air Line Pilots Ass'n, 346 F.2d 270, 274–275 (7th Cir. 1965). The authority derives from § 408 of the Aviation Act which empowers the CAB to approve mergers and other related transactions "upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe * * *." As in Oling, this case presents a situation in which the CAB, acting within its explicit jurisdiction and authority, gave its approval to the merger upon the condition that certain labor protective provisions be complied with. The complaint concerns actions which occurred in the process of resolving problems in which the CAB expressed a proper interest in the merger order, and over which the CAB retained jurisdiction.

The CAB is no stranger to these matters. In Kent v. CAB, 204 F.2d 263 (2d Cir. 1953), the court approved formulation by the CAB of its own integrated seniority list. Furthermore, the CAB dealt with labor problems in detail when it attached more than four pages of labor protective provisions to its one-page order approving the United-Capital merger. United-Capital Merger Case, 33 CAB 307, 342–47 (1961). The CAB's opinion accompanying the order shows a thorough analysis of the labor problems resulting from the merger. 33 CAB at 323–31. This is consistent with the CAB's usual practice. See, e. g., Delta-Chicago & Southern Merger Case, 16 CAB 647 (1952); Braniff-Mid-Continent Merger Case, 15 CAB 708 (1952). See also, North Atlantic Route Transfer Case, 12 CAB 124 (1950); United-Western, Acquisition Air Carrier Property, 11 CAB 701 (1950), affirmed sub nom. Western Air Lines v. CAB, 194 F.2d 211 (9th Cir. 1952). It may be true, as a general proposition, that the CAB's "experience and expertise is with transportation not labor relations problems." Outland v. CAB, 109 U.S.App.D.C. 90, 284 F.2d 224, 228 (1960). Nonetheless, the CAB has acquired extensive experience and expertise in the special areas of labor relations which necessarily fall within its duties under the Aviation Act.

Control over seniority list integration is basic to the regulatory scheme administered by the CAB pursuant to § 408 of the Aviation Act; the success of the merger may be at stake. Uncoordinated, unsupervised attempts to resolve this particularly troublesome problem may result not only in industrial strife, but also in an inefficient or uneconomic operation; the merger, its purposes, and the public interest against which it is tested may be threatened. See United States v. Lowden, 308 U.S. 225, 238, 60 S.Ct. 248, 84 L.Ed. 208 (1939); Kent v. CAB, 204 F.2d 263, 265 (2d Cir. 1953). If the CAB properly and thoroughly performs its duties pursuant to § 408, it cannot ignore the inevitable labor problems created by a merger. The fact that the Aviation Act does not specifically mention these problems does not make them any less central in a merger case. Thus, this is not a case in which the matters in suit fall beyond the area which the CAB is explicitly charged with regulating. Unlike Hughes, the complaint here concerns merger-created difficulties which the CAB dare not ignore, rather than problems removed in time and substance from CAB concern.

This important area of the total complex of merger considerations cannot be subject to independent scrutiny and interference by the courts pursuant to a separate statutory scheme. The parties affected by the CAB merger order cannot be required to answer in different forums at different times on different charges for actions taken under the CAB merger umbrella. Were this court to hear this case, it would be directly entering an area over which the CAB has properly reserved jurisdiction; were the relief prayed for to be granted here, the orders and interests of the CAB might be undermined. Congress cannot have intended such a collision. This is the thrust of Pan American and § 414. See Brotherhood of Loco-

motive Engineers v. Chicago & North Western Railway Co., 314 F.2d 424, 431–432 (8th Cir. 1963). The CAB must be permitted to consider the charges of this complaint in the total context of the merger and in light of the public interest which it is charged with protecting under § 408.

■ It cannot be doubted that the CAB, if asked, would fully hear the subject matter of this complaint and deal with it on its merits. Although the CAB ordinarily declines to intervene in matters best left to private resolution, it will act in exceptional cases where charges of bad faith or of deliberate intent to subvert a CAB order are made. Delta-C & S Seniority List, 29 CAB 1347 (1959), enforced sub nom. Outland v. CAB, 109 U.S.App.D.C. 90, 284 F.2d 224 (1960). The charges in the complaint here fall well within this category—almost word for word—of charges which will trigger a CAB hearing.

Any doubt that the CAB will regard the charges of Count I as lying within its jurisdiction has been resolved by the CAB itself; substantially identical charges were heard and resolved when the United career flight engineers attacked the integrated seniority list now attacked by plaintiffs. The CAB considered these charges on the merits and concluded that the list was a fair list, fairly arrived at. United-Capital Merger Case, Order No. E–20740, April 24, 1964. It is clear that if plaintiffs ask to be heard, the CAB will listen.

In summary, control over seniority integration is basic to the CAB's § 408 task and Count I deals solely with this problem. Consequently, plaintiffs must go to the CAB for whatever relief they are entitled to; they cannot stay here. Count I of the complaint is dismissed for these reasons.

## II.

■■ Were Count I properly before this court, it is clear from the facts upon which the parties have agreed that the defendants would be entitled to summary judgment. Whatever charges are made against ALPA and United, the simple fact is that the integrated pilot seniority list about which plaintiffs complain was formulated by a neutral arbitrator whose standing, skill and integrity are not questioned. Furthermore, although plaintiffs did not appear specially before the arbitration board, neutral Harry Abrahams, in making the award, said:

> "The rights of every Pilot listed in the merged seniority list were individually considered. Other matters considered in setting up the merged list were: 'Blockers,' the '88 Group,' the '120 Group,' the 'Vanlehn Group,' the 'Pre-Harper Group,' the 'Harper Group,' 'excessive school time,' furlough time, and many other factors too numerous to mention."

Of the forty-one plaintiffs here, thirty-three were in the "Vanlehn Group," and all of the plaintiffs are similarly situated. However discriminatory, unfair and inequitable the defendants are alleged to have been, the fact remains that plaintiffs are seeking to overturn a seniority list carefully formulated by a neutral arbitrator who is in no way alleged to have been unfair.

Furthermore, applying the law governing charges of failure to represent a minority of a labor organization, it is clear that relief could not be granted on Count I of the complaint. A complaint charging breach of the duty of fair representation must show some reasonable basis for concluding that the bargaining representative acted upon the basis of capricious or arbitrary factors, rather than relevant ones. It must show hostility or arbitrariness, and bad faith. Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). This complaint shows quite the opposite.

The position given plaintiffs on the integrated seniority list resulted from the invocation of a rational, non-arbitrary distinction between plaintiffs and other pilots. Even though they were qualified as pilots between 1949 and 1954, the critical and controlling fact is that plaintiffs filled jobs for which their pilot training was not required during that

period. Their pilot training was superfluous and of no importance to United. The fact that plaintiffs had pilot qualifications does not entitle them to pilot seniority unless they were serving in positions for which pilot qualifications were required. In contrast, the pilots at Capital who received seniority credit for the time spent as flight engineers were required to qualify as pilots before they could occupy a seat on the flight deck. It is rational, and not arbitrary or unfair, to say that this difference in employment histories justifies a difference in seniority. Plaintiffs must know this by now, because this is the issue which has been litigated in one form or another several times since 1955.

The broad charges of discrimination find no support in the facts agreed upon by the parties. On the contrary, it is clear that both the neutral arbitrator and the defendants reached a rational decision on the question of seniority integration. Plaintiffs understandable dissatisfaction with that result does not provide cause for overturning it. Were Count I properly before me, I would grant summary judgment on it for the defendants.

### III.

Count II of the complaint deals with an award by a System Board of Adjustment. Plaintiffs charge that the Board exceeded its jurisdiction and that the award should be overturned. Plaintiffs invoked the grievance machinery at United on August 28, 1963, claiming that their position on the integrated seniority list was erroneous in that it failed to give them credit for time spent as flight engineers. After denials of the grievances at each stage of the machinery, the controversy was submitted to a System Board before which plaintiffs were represented by their attorney. The Board issued a letter of deadlock and was subsequently joined by a fifth neutral member, Dr. Mark L. Kahn. The five-man Board denied the grievance.

The controversy revolves around three sections of the 1963 bargaining agreement between ALPA and United. Section 2–A defined "pilot," as follows:

" 'Pilot' means captain, bid reserve captain, first officer and second officer and shall include only those pilots on the United Air Lines Pilots' System Seniority List.

The definition includes flight engineers.

Section 6–A–1 of the Agreement provides as follows:

"Pilot seniority shall accrue from the date of first assignment to the airline as a pilot for airline flying duty with the Company or with other companies whose operations have been taken over by the Company prior to the signing of this Agreement. Seniority shall continue to accrue from such date and shall not cease to accrue or be lost except as provided in this Section and Sections 7 and 12 of this Agreement."

Finally, Section 6–B–1 of the Agreement provided as follows:

"The United Air Lines Pilots' System Seniority List shall be the list established in the Letter of Agreement between the Company and the Association signed June 11, 1963. Copies of this * * * List, brought up to date as of July 1 of each year, shall be posted and distributed to all pilots and considered the official current list."

The list adopted in § 6–B is the Abrahams-Cole arbitration list, and it does not conform to the requirements of § 6–A–1. Unlike previous United-ALPA agreements, the 1963 agreement includes flight engineers in the definition of "pilot." Since § 6–A–1 prescribes that "pilot seniority shall accrue from the date of first assignment to the airline as a pilot for airline flying duty," it is clear that the § 6–B list does not conform because it fails to give plaintiffs credit for time spent as flight engineers. Defendants respond that § 6–A–1 was intended to operate only prospectively as new names were added to the seniority list, and was not intended to reach back and amend the list adopted in § 6–B.

The arbitrator held that § 6–A–1 could not be used to amend § 6–B's list. Plaintiffs contend that this ruling exceeded the arbitrator's authority because, rather

than interpreting the words of the Agreement, it modified and added to the Agreement. Plaintiffs' position is that § 6–A–1 on its face applies to all seniority lists, past and future, and that a limitation to prospective use constitutes an amendment of the Agreement.

■■ If the arbitrator's holding constitutes an amendment of the Agreement, he did exceed his authority and the award cannot stand. The authority of an arbitrator is limited both by statute and the Agreement to "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements * * *." Railway Labor Act, § 204 (45 U.S.C. § 184); United-ALPA Agreement Covering the Establishment and Maintenance of a System Board of Adjustment, § (e). The arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The arbitrator may seek guidance from many sources outside the agreement as long as his award draws its essence from the agreement. The question in this case is simply: "What did the arbitrator do?"

The arbitrator voted to deny the grievances in part because "both parties to the 1963 Agreement, by credible and undisputed testimony, have affirmed that they did not intend the 'attached' seniority list to be altered on the basis of a literal reading of § 6–A–1." He further noted that "this evidence is reinforced by the unambiguous first sentence of § 6–B, and it is confirmed by all of the circumstances surrounding the Abrahams and Cole awards." He also relied on the logic of the Agreement: "It should be obvious that if the parties had desired a seniority list to be derived from § 6–A–1 (and the new definition of 'pilot') they would not have adopted the Abrahams-Cole list."

The arbitrator also explained why, if the § 6–B list was intended to be immune from § 6–A–1 standards, the parties did not explicitly state in § 6–A–1 that it was to be prospective only. He reviewed "some relevant history," noting that "language equivalent to § 6–A–1 has been included in every United-ALPA agreement since their first contract in 1940." The section from the 1940 contract was then quoted. He then pointed out that "because United had been created by a merger of several carriers, the parties were confronted at the outset with the necessity of developing an official integrated seniority list." This was accomplished by a special board. "The resulting integrated seniority list did not correspond precisely to the § 6–A–1 formula, but it was adopted by the parties and was not subject to retrospective correction on the basis of this formula." The 1942 United-ALPA contract provided that the 1940 list was the official list and was to be revised periodically. "This provision was retained in each succeeding United-ALPA contract up to 1963, and all that the parties did in 1963 was to replace the § 6–B reference to the 1940 list by a reference to the Abrahams-Cole list." This substitution was required by the United-Capital merger.

The arbitrator concluded: "The history of the § 6–A–1 provision has persuaded me that, in spite of its defective language, it has always been intended to have only prospective application. I am convinced that this traditional intent was retained by the parties in their 1963 Agreement."

History, language, structure and background formed the basis for the arbitrator's determination of the meaning of the Agreement. The result was reached by the usual techniques of contract interpretation. All the arbitrator did was unearth the true intent of the parties to the Agreement by means of a thorough investigation; he certainly did not exceed his authority by dispensing "his own brand of industrial justice."

■ The Agreement is hopelessly in conflict with itself on its face: it adopts

seniority standards in one section and a non-conforming list in another. It is, in short, ambiguous; its words standing alone do not justify the arbitrator's result; but similarly they do not support a change in seniority status for plaintiffs. Both results are inconsistent with the words of some portion of the Agreement. An arbitrator is employed to pierce this opaque veil, if he can, and discover what it was the parties intended when they wrote the conflicting words. This is the ordinary process of interpretation, well within the authority of an arbitrator. This is what Dr. Mark L. Kahn did; he did it thoroughly, properly and well and his award is consequently final, binding and immune to attack here.

For the reasons stated in the foregoing memorandum opinion, I have entered an order today dismissing the complaint.