D. L. ANDERSON et al., Appellants,

v.

UNITED TRANSPORTATION UNION and Norfolk and Western Railroad Carrier Representatives, Appellees.

No. 76–1857.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1977.

Decided June 24, 1977.

* JACK R. MILLER, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

John H. Haley, Jr., St. Louis, Mo., for appellee, United Transportation Union.

Martin M. Lucente, Chicago, Ill., for appellee, Norfolk and Western Railway Company; Kirk B. Johnson, Sidley & Austin, Chicago, Ill., and Albert E. Schoenbeck and John H. Haley, Jr., St. Louis, Mo., on brief.

Susan M. Hammer, Clayton, Mo., for appellants; Charles P. Todt, Clayton, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

D. L. Anderson and others, employees of the Norfolk and Western Railway Company, bring this action individually and as a class seeking damages, injunctive relief, and attorneys' fees against the United Transportation Union (Union) and the Norfolk and Western Railroad Carrier Representatives (Norfolk and Western), contending that the defendants violated provisions of a labor protective agreement relating to the merger of the Norfolk and Western Railway Company and other railroads, including the Wabash Railroad Company (Wabash) and the New York, Chicago and St. Louis Railroad Company (Nickel Plate);[1] that the defendants also violated the statutory provisions[2] requiring fair and

1. The order issued by the ICC approved the merger of the Nickel Plate into the Norfolk and Western, and the acquisition by the Norfolk and Western of control of the Wabash by lease and stock ownership. *Norfolk and Western Railway Company and New York, Chicago and St. Louis Railroad Company—Merger, etc.*, 324 I.C.C. 1 (1964).

2. 49 U.S.C. § 5(2)(f), reads, in pertinent part:

equitable treatment for employees affected by a merger; and that the Union failed to represent properly the employee-plaintiffs. The complaint further specifically alleges that a post-merger consolidation agreement between the Norfolk and Western and the Union, referred to as the 1972 St. Louis consolidation agreement, authorizing the consolidation of railroad facilities in the St. Louis area, has caused the plaintiffs to sustain a loss of employment rights and benefits.

The district court dismissed the action on motion of Norfolk and Western on grounds that primary jurisdiction of the complaint rested with the Interstate Commerce Commission.[3] We agree and affirm, but direct minor modifications in the dismissal order.

In the complaint, appellants alleged the following facts. In 1962, an "Agreement for the Protection of Employees" was entered into by the carriers and the unions in furtherance of the pending merger; in 1964, the ICC approved the merger—that approval was conditioned upon the execution of the 1962 labor protective agreement which mandated that "employees shall not be deprived of employment or placed in a worse position with respect to compensation, rules, working conditions, fringe benefits, or rights and privileges." The plaintiffs alleged additionally that the ICC in its 1964 merger approval order had not specifically authorized the future consolidation of the former Wabash facilities in St. Louis with nearby facilities of other premerger carriers. Nevertheless, under the St. Louis consolidation agreement of April 22, 1972, facilities previously operated on a separate basis by the Nickel Plate in the East St. Louis area and by the Wabash in the St. Louis area have been unified and consolidated into a single railroad facility, and this consolidation adversely affected the appellants.

The plaintiffs-appellants specifically allege, with respect to their injuries:

(f) As a condition of its approval * * * of any [merger] transaction involving a carrier or carriers by railroad subject to the provisions of this chapter, the Commission shall require a fair and equitable arrangement to

11. That pursuant to the Interstate Commerce Commission approved merger, the Nickel Plate Madison employees were forced to take jobs on the west side of the river which infringed upon the Wabash West employees' employment rights, but only after the St. Louis Consolidation Agreement was placed in effect.

12. That the Consolidation Agreement has destroyed seniority rights and job opportunities.

\* \* \* \* \* \*

16. As a result of said consolidation of April 22, 1972, there are not enough job assignments on the Wabash West territory thus substantially affecting 70% of the persons as contrary to the agreement of 1962, and that which is not covered by the initial Interstate Commerce Commission approval of 1964.

17. As a result of said consolidation of April 22, 1972, said switch foremen were reduced to switch helpers, said switchmen lost seniority rights, switchmen were intimidated and forced to resign, switchmen who worked day shifts were forced to work night shifts, 70% of the jobs were lost, and 75% of the men were lost.

Additionally, appellants allege that the Union did not allow any local chairman to be present at the meetings relating to the consolidation, and that the Union violated its constitution by not allowing members of the local to be present and to vote on issues affecting their craft.

Appellants summarize their contentions in paragraph 22 of the complaint, as follows:

A. The pre-merger [labor protection] agreement of 1962 was not complied with.

B. The Interstate Commerce Commission approval became effective only on the condition that the 1962 agreement was followed.

protect the interests of the railroad employees affected.

**3.** *D. L. Anderson v. United Transportation Union,* 420 F.Supp. 749 (E.D.Mo.1976).

C. The Interstate Commerce Commission approval did not apply or effectuate the April 22, 1972 consolidation and that a separate approval was therefore necessary.

D. The Defendants are in violation of 5(2)f of the Act 49 USCA.

E. That the Defendants, United Transportation Union, have failed to represent the Plaintiffs. That the Defendants have acted wantonly or maliciously, or have acted recklessly in callous disregard to the Plaintiffs' rights, or the Plaintiffs' rights were disregarded with unnecessary harshness or severity.

The district court construed the allegations of the appellants' complaint as "complaining that the terms of the merger, incorporating the agreement to protect employees' rights, have not been complied with." Accordingly, the district court, relying on the prior decision of this court in *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853 (8th Cir. 1975), held that the ICC has primary jurisdiction to determine whether the parties have complied with the merger order and the employee protection agreement. The district court also determined that the appellants had failed to state a claim of unfair representation against the Union and, therefore, directed dismissal of the complaint.

We agree with these determinations.

In *Augspurger,* a division of the engineers' union and seventeen members of that union brought an action against the Brotherhood of Locomotive Engineers for monetary damages for the union's alleged breach of its duty of fair representation in consolidating seniority rosters following the Burlington Northern merger (*Great Northern & Burlington Lines, Inc., Merger,* 331 I.C.C. 228 (1967)). The union in *Augspurger* contended that even if it had breached its duty of fair representation, such conduct would constitute a violation of the ICC's order and, consequently, the plaintiffs' remedy, if any, must lie with the ICC.

In *Augspurger,* we recognized that the doctrine of primary jurisdiction called for submission of the plaintiffs-employees' claims to the administrative agency, unless plaintiffs' complaint could be said to state a claim for unfair representation, an exception to the primary jurisdiction doctrine. In order to invoke the exception, we said that the plaintiffs must do more than present conclusory allegations alleging discrimination. Quoting from *Gainey v. Brotherhood of Railway & Steamship Clerks,* 313 F.2d 318, 323 (3d Cir. 1963), we said that the plaintiff

\* \* \* must have more than conclusory statements alleging discrimination. In particular plaintiffs must make a showing that the action or inaction \* \* \* complained of was *motivated* by bad faith, for the gravaman [sic] of the rule is "hostile discrimination." An allegation that certain conduct of the [Union] \* \* \* is "invidious" and "discriminatory", without a concomitant identification of lack of good faith, will not set forth a claim sufficient to call for the use of the \* \* \* [unfair representation] doctrine. \* \* \* [*Augspurger, supra,* 510 F.2d at 859.]

The appellants make the following arguments in opposition to the district court's dismissal of the complaint:

1) That the ICC does not have primary jurisdiction over the cause in any event because the merger did not include the area referred to as the Wabash West area, the area where appellants worked, and because the merger order did not authorize the St. Louis consolidation. In connection with this argument, appellants contend that the ICC's authority is limited to approving mergers, and that the ICC does not exercise jurisdiction over disputes between railroads and their employees arising out of protective agreements made in furtherance of mergers.

2) That appellants' pleading was adequate to demonstrate wanton and malicious conduct by the Union in failing to represent the appellants by refusing locals any opportunity to participate in and vote upon the St. Louis consolidation agreement, thus bringing this case within the exception to the primary jurisdiction rule.

## I. *ICC Jurisdiction Over Wabash West Yards.*

■ The ICC merger approval order and the report of the ICC hearing examiner, of which we take judicial notice, clearly indicate that the merger included the St. Louis facilities of the Wabash. *See Norfolk and Western, supra,* 324 I.C.C. at 70, 73, and 90. Moreover, the ICC, in approving the merger, anticipated future consolidations. According to the ICC's hearing examiner, some of the anticipated benefits from the proposed merger were the operating economies expected to result from "combining forces and services at many of the 13 points which are common to the lines proposed to be unified." *Id.* at 78. The examiner, as an example, mentioned the common point of operation of the Wabash and Nickel Plate yards, "[a]t and in the vicinity of East St. Louis." *Id.* at 79. The premerger protective agreement, as quoted by appellants in their complaint, authorized the transfer of employees "throughout the merged system." Thus, the undisputed record requires that we reject as without merit the claims that the merger order did not apply to the St. Louis yards of the Wabash and did not authorize appellee Norfolk and Western to consolidate the railroad facilities in the St. Louis-East St. Louis area.

■ The *Augspurger* decision requires that we affirm. The complaint itself indicates that the roots of the present controversy rest in the Norfolk and Western merger. Appellants claim that rights granted by the premerger labor protective agreement and 49 U.S.C. § 5(2)(f) have been violated by Norfolk and Western. The primary jurisdiction rule announced in *Augspurger* applies to precisely such disputes. *See* cases cited in n.6 *infra.* As in *Augspur-*

ger, this complaint raises the questions of whether the parties have complied with the premerger protective agreement, the ICC merger approval order, and the statutory mandate for a fair and equitable arrangement to protect the interests of the employees affected by a merger. *Augspurger, supra,* 510 F.2d at 857.[4]

## II. *Sufficiency of the Complaint to Invoke the Fair Representation Doctrine.*

■ The conclusory contentions in the complaint that the defendant-Union "failed to represent the plaintiff" and that the Union and the railroad acted "wantonly", "maliciously", and "recklessly" do not, without more, invoke the fairness doctrine. These allegations are amplified to some degree in paragraphs 19, 20, and 21 of the complaint, in which the plaintiffs-appellants allege that no local chairmen were allowed to be present at any meetings relating to the St. Louis consolidation, and further claim that the Union's refusal to permit local participation in the consolidation agreement violated article 80 of the Union constitution. But, the complaint does not allege that the plaintiffs were excluded, while other local members were permitted to be present and to participate in the conference. According to the complaint, the United Transportation Union did not permit *any* local representatives to participate in the negotiations. Additionally, article 80 of the Union constitution, allegedly violated by the Union, appears on its face to refer to meetings solely devoted to local working conditions, and not to negotiations for an agreement arising out of a merger.

We said in *Augspurger:*

---

4. Appellants would distinguish this case from *Augspurger* on the basis that the *Augspurger* plaintiffs did not sue the railroad. However, the decision in *Augspurger* rested on a number of cases involving mergers supervised by the Civil Aeronautics Board—*Carey v. O'Donnell,* 165 U.S.App.D.C. 36, 506 F.2d 97 (1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975); *Kesinger v. Universal Airline, Inc.,* 474 F.2d 1127 (6th Cir. 1973); *Oling v. Airline Pilots Association,* 346 F.2d 270 (7th Cir.), *cert.*

denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965); *Hyland v. United Air Lines, Inc.,* 254 F.Supp. 367 (N.D. Ill.1966). In *Kesinger, Oling,* and *Hyland,* the plaintiffs named the air carrier as a party. Additionally, the controversy over whether the parties to the agreement have invaded employees' rights as guaranteed by the merger and under 49 U.S.C. § 5(2)(f), involves both the union and the railway as appropriate defendants.

The complaint does not allege that the Union's actions were intentional, were hostile to any class of persons, or were undertaken with the deliberate purpose of benefiting other employees in the district. [*Augspurger, supra,* 510 F.2d at 859.]

This comment applies here. We agree with the district court that the complaint does not invoke the fair representation doctrine.

The district court properly ruled that this complaint should initially be presented to the ICC for consideration under its primary jurisdiction. *Augspurger v. Brotherhood of Local Engineers, supra; see also American Train Dispatchers Ass'n v. Burlington Northern,* 551 F.2d 749, (8th Cir. 1977).

The appellants contend, however, that the ICC will not exercise jurisdiction over this case. Because the district court did not discuss this contention, we believe that it would be appropriate to modify the district court's determination in this case to vacate the dismissal, and in lieu thereof, to enter a stay of all proceedings in order to give appellants an opportunity to present the complaint in appropriate form to the ICC. That stay order should remain in effect until the ICC determines whether or not it will exercise jurisdiction. If jurisdiction is exercised the court may then dismiss this action. Should the ICC decline jurisdiction, the district court may then take further appropriate action.

We affirm the district court, subject to the modification set forth herein.