Leland J. SANDERS et al., Petitioners,

v.

AIR LINE PILOTS ASSOCIATION INTERNATIONAL and Airlift International, Inc., Respondents.

No. 71 Civ. 4288.

United States District Court,
S. D. New York.

April 27, 1973.

Jonathan S. Liebowitz, New York City, for petitioners.

Stephen B. Moldof, Cohen, Weiss & Simon, New York City, for respondent ALPA.

James B. Rhoads, Fisher & Phillips, Atlanta, Ga., for respondent Airlift.

## MEMORANDUM OPINION

PIERCE, District Judge.

This case came on to be heard upon on order to show cause filed by the thirteen petitioners who are former Slick flight engineers and so-called "grandfathers"

(hereinafter "grandfathers") for a preliminary injunction to prevent respondents Air Line Pilots Association International (hereinafter "ALPA") and Airlift International, Inc. (hereinafter "Airlift") from processing certain grievances which would allegedly affect certain rights of the grandfathers presently at issue before the Court. Jurisdiction is based on 45 U.S.C. § 151 et seq., and § 181; 28 U.S.C. § 1337.

A hearing was held on March 16 and 23, April 2, 3, 4, and 5, 1973 on the issues raised by the petition for a preliminary injunction. All parties were afforded full opportunity to be heard, to examine and cross-examine, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, evidence, arguments and briefs of counsel.

## FINDINGS OF THE COURT

The petitioners are former Slick flight engineers, now employed by Airlift as pilots who fly third seat positions. Respondent ALPA is a labor organization and is the exclusive bargaining representative of all flight deck operating crew members employed by Airlift. This means they are the exclusive representatives of the former Slick flight engineers (petitioners), the former Slick pilots,[1] and the former Airlift pilots. Respondent Airlift is an air carrier engaged in the business of providing air transportation service pursuant to certificates of convenience issued by the Civil Aeronautics Board (hereinafter "CAB"), under the Federal Aviation Act of 1958.

On or about September 5, 1961 the pilots in the employ of Slick Airways, Inc. (hereinafter "Slick"), as represented by ALPA, and the flight engineers of Slick (petitioners), as represented by the Flight Engineers International Association, entered into an agreement. On or about September 5, 1961, the same parties and Slick entered into an agreement. By virtue of these agreements (together termed the 1961 Tripartite Agreement), ALPA was designated as the exclusive collective bargaining agent for the Slick flight engineers. These flight engineers were given certain seniority rights ("grandfather" rights) which provided preferences to the third seat on aircraft over all other pilots on the Slick pilots' system seniority list. The tripartite agreement also provided for a Joint Grievance Board to resolve disputes which arose under the agreement.

The Joint Grievance Board would consist of one representative from the grandfathers, one from ALPA, and one from Slick. Any member could demand binding arbitration in the event of disagreement. Under this board, the petitioners had the right of separate representation and could compel arbitration in any dispute not resolved by agreement.

The terms of the 1961 Tripartite Agreement were binding on the successors of Slick Airways, if any, as long as any of the petitioners remained on the Slick pilots' system seniority list. In June, 1966, Slick merged with Airlift, Airlift being the surviving company. Thus the terms of the tripartite agreement were binding on Airlift Interna-

---

1. As a result of the 1961 Tripartite Agreement, ALPA, which had formerly represented only the Slick pilots, also became the representative of the Slick flight engineers. Subsequently, the Slick MEC, LEC and other councils had flight engineer representatives, and included them as members.

Further, pursuant to paragraphs 5-6 of Appendix A of the tripartite agreement, the Slick flight engineers had the option of either qualifying as pilots in order to fly the third seat on jet aircraft, or of being restricted to the third seat on piston driven and/or turbo prop aircraft. According to testimony in the record, all petitioners obtained pilots' licenses and instrument ratings shortly after the tripartite agreement was signed.

Therefore the term Slick pilots or Slick pilot group as used herein will also include the former Slick flight engineers who are the petitioners.

tional, Inc. However, the Airlift flight crew personnel had not been a party to the tripartite agreement and therefore were not bound by it.

In order to obtain CAB approval of the merger the companies had to comply with certain requirements promulgated by the CAB. Among other things, the CAB ordered the then separate pilot seniority lists of the two airlines to be integrated in a "fair and equitable" manner. Under the general authority of the CAB orders, a series of arbitration proceedings were held before an arbitration board chaired by David L. Cole. The first set of proceedings was between the Airlift pilot group and the Slick pilot group (including the petitioners), and determined the relative rights of the pilots in each group. The second set of proceedings determined the manner in which the integrated seniority lists arrived at in the first set were to be implemented into the company's operations. The third set of proceedings dealt with the integration of the separate pilot collective bargaining agreements into a single document. The System Board of Adjustment was one of the features of this single collective bargaining agreement. Under this current system, which supersedes the Joint Grievance Board of the tripartite agreement, the petitioners alone cannot compel binding arbitration, although they do have a seat on the grievance board.

During the CAB proceedings and the arbitration hearings which followed, the Slick pilots (including the petitioners), by its Master Executive Council (hereinafter "MEC") engaged and paid an attorney, Richard Watt, to represent them.

The tripartite agreement gave the grandfathers the right to be represented on the Slick MEC and other bodies, and one member of the MEC, Harold Hedlund, is a grandfather, and a petitioner herein.

In all three sets of proceedings the Cole Board dealt specifically with questions concerning the tripartite agreement. Harold Hedlund, grandfather representative to the Slick MEC, was present at the arbitration hearings. The February 13, 1968 Award of the Board provided for a single, integrated seniority list. It also found Airlift bound by the 1961 Tripartite Agreement; it made provision for preferential rights to be accorded the grandfathers under the 1961 Tripartite Agreement; and it made provision for "make-whole" pay [2] to compensate any grandfather who could not exercise his preferential rights because of an intervening Airlift pilot who was not bound by the 1961 agreement. On February 22, 1968, the Slick MEC through its attorney, Richard Watt, filed an application for reconsideration of the February 13, 1968 Award. Specifically they challenged the Board's handling of the 1961 Agreement. Subsequent awards in March, May, and June 1968 further protected the rights of the grandfathers under the tripartite agreement in light of the merger.

On June 11, 1968, Mr. Watt agreed to binding arbitration on behalf of the Slick MEC (including petitioners) as to how the tripartite agreement should be applied. This resulted in the August 28, 1968 Award: Supplement re Tripartite Agreement of September 5, 1961. A detailed set of rules was formulated for

2. "Make-whole" pay is a term used in the February 13, 1968 and subsequent Cole Awards to describe the following situation:

. . . if any of these fifteen (15) former flight engineers is prevented from asserting rights as set forth in the agreement of September 5, 1961, to a second officer position awarded to a former Slick pilot because there are one or more Airlift pilots who would take the position if it were declined or

vacated by the Slick pilot, by virtue of seniority superior to that of the most senior of this flight engineer group who bid for the given position, this individual should be made whole by Airlift as employer for the difference between what he earns in the given pay periods and what he would have earned if he had been able successfully to assert his rights under the Slick flight engineer "grandfather" agreement.

the treatment, under the tripartite agreement, of flight deck personnel, in light of circumstances occasioned by the merger of Slick and Airlift. These rulings were made binding on Airlift by a Cole Award on October 28, 1969.

As stated above, Harold Hedlund was present throughout these arbitration hearings. No limitations on his status, restricting his role on behalf of the grandfathers to that of a mere observer, were ever communicated by the grandfathers, including Mr. Hedlund, to the arbitrators or to anyone else participating in the hearings. In addition, nothing in the record reveals any communication to the arbitrators that Richard Watt, the counsel retained by the Slick MEC, was not authorized to speak on behalf of the grandfathers at the hearings, as petitioners now assert.

The record reveals that none of the petitioners ever petitioned the CAB to redress alleged wrongs resulting from the CAB-sponsored arbitration hearings, nor did they assert in any formal way that the arbitrators had not integrated the lists in a "fair and equitable" manner. Further, it appears that none of the petitioners ever filed a grievance through the System Board of Adjustment established by the 1970 single collective bargaining agreement, or through other established grievance machinery, nor have they brought any action to overturn any of the arbitration awards. Although the petitioners were aware of the alleged damage to their seniority and other rights in early 1968, they took no action until February 12, 1970 when they sought to convene the Joint Grievance Board under the tripartite agreement.

Despite the adoption by ALPA and Airlift of a single collective bargaining agreement on February 24, 1970, which provided for a System Board of Adjust-

ment as the grievance machinery for all Airlift flight crew personnel (which includes the petitioners), the petitioners' claim on the merits is based on the Tripartite Agreement of 1961. Respondent ALPA contends that the Joint Grievance Board created by the tripartite agreement ceased to exist after the Slick-Airlift merger, subsequent arbitrations, and the 1970 single collective bargaining agreement which established the System Board of Adjustment. Petitioners claim the tripartite agreement is still controlling. Respondent Airlift claims either one or the other is applicable, but not both.

The preliminary injunction sought herein is predicated on the fact that respondent ALPA has twice postponed the processing of certain grievances pursuant to its grievance machinery, and it intended to go forward with that processing on April 23, 1973.[3] Petitioners are seeking to enjoin any such proceedings which involve grievances concerning alleged "furloughing out of seniority"[4] by respondent Airlift and alleged failure of Airlift to pay make-whole pay, since these are issues which the petitioners have brought before the Court for determination.

## DISCUSSION

Before the Court can issue an injunction it must be satisfied that there is the probability of petitioners' success on the merits, that irreparable harm will ensue to petitioners if the injunction does not issue, and that on balance, they will be more harmed if the injunction is not granted than the respondent ALPA will be if it is granted. Sanders v. ALPA & Airlift International, 473 F. 2d 244 (2d Cir. 1972); Stark v. New York Stock Exchange, 466 F.2d 743 (2d Cir. 1972); Dino DeLaurentiis Cine-

3. At the request of the Court, counsel for respondent ALPA agreed not to proceed with any System Board hearings on make-whole pay or furlough out of seniority grievances during the week of April 23, 1973.

4. This is a type of grievance where claimants allege that they have been furloughed or laid off while men junior to them (further down on the seniority list) continue to work, or that they have not been recalled in seniority order.

matografica, S.p.A. v. D–150, Inc., 366 F.2d 373 (2d Cir. 1966).

Petitioners allege that a precedent will be set once the particular grievances go to arbitration or are resolved internally. And further, should this Court make a ruling which is adverse to the administrative or arbitration procedure under which ALPA is about to proceed, the confusion resulting would be insurmountable. Respondent ALPA contends that damages to petitioners, if any, should they succeed on the merits herein, are recompensable in the form of monetary damages. Respondent Airlift claims that it will be irreparably harmed if the grievance process is not enjoined pending the Court's determination on the merits, since it may be threatened with multiple lawsuits by the various parties, and thus it joins petitioners in seeking this preliminary injunction.

The Court agrees that any harm caused to the petitioners by the denial of the injunctive relief requested could be monetarily recompensed. It further appears that any actual harm to respondent ALPA which would result if the injunction were granted is not so much actual irreparable damage as it is an inconvenience to ALPA due to the further delay it would experience in the orderly processing of its grievances. Thus upon consideration of two of the three elements necessary to enjoin, the equities might support the granting of the injunction.

However, in considering the third element, probability of success on the merits, much closer examination is required.

In substance, the petitioners' claim is based on their asserted rights under the 1961 Tripartite Agreement. While denying that they seek to overturn the 1968 and subsequent Cole arbitration awards, petitioners in actuality are seeking a judicial determination of their rights to make-whole pay, furloughing out of seniority, base bids, bumping rights, etc., either in spite of or in addition to the arbitration awards which culminated in the 1970 ALPA-Airlift collective bargaining agreement and the integrated seniority list. Petitioners contend that their rights under the tripartite agreement were not and could not have been affected by any determinations made by a board foreign to that agreement. They refuse to recognize the results of the Cole arbitrations, their classification as "pilots" instead of "flight engineers",[5] their positions on the integrated seniority list, and the fact that Cole dealt with the 1961 Tripartite Agreement. Yet while petitioners refuse to recognize any authority in the Cole Boards to affect their rights under the 1961 Tripartite Agreement they include as part of their cause of action before this Court the right to make-whole pay—a compensation created solely by the February 13, 1968 and subsequent Cole Awards. This inconsistency demonstrates a tendency on the part of petitioners to "pick and choose" only those aspects of a situation which are favorable to them. Still another example found throughout the testimony of the petitioners is their claim on the one hand that ALPA had a duty to represent them and was their exclusive bargaining representative, and on the other hand to assert that on the several occasions when ALPA did bargain for or represent the pilots as a whole, it had not represented the grandfathers fairly.

Underlying all of the petitioners' claims set forth in the amended and supplemental petition is a fundamental disagreement with the awards of the Cole arbitrations: the line of attack chosen by petitioners is to assert rights under the tripartite agreement. To gauge the probability of success on the

---

5. At present all petitioners are really pilots in addition to being flight engineers. However, they all became pilots much later than they became flight engineers and therefore have much higher (less desirable) seniority numbers as pilots than they would have as flight engineers. The integrated seniority list made no provision for flight engineers as such, and therefore the petitioners' numbers as pilots determine their place on the seniority list.

merits, it becomes necessary to consider the current status of the 1961 Tripartite Agreement, along with the propriety of challenging the alleged violations thereof in this forum.

Petitioners contend that ALPA was a signatory to the tripartite agreement, and that since ALPA also represented the Airlift pilots in 1961, it bound them as well when it signed the agreement. Thus the terms of that agreement which gave the grandfathers priority over Slick pilots for flight engineer or third seat positions should have been extended to grant them priority over the Airlift pilots after the merger of the two companies in 1966.

In support of this position petitioners quote from the tripartite agreement and from some of the Cole Awards, to wit:

[Paragraph 18 of Appendix "A" to the tripartite agreement:]

"If the Company [Slick] is merged, purchased, or in any way consolidated with another company, the terms of this Agreement shall be binding upon the successors or assigns of the Company."

[Opinion and Award re Integration of Seniority Lists 2/13/68, p. 8:]

"This [1961] Agreement guaranteeing the prior rights of these former flight engineers to second officer positions was one of the agreements for which Airlift became responsible."

[Supplemental re Tripartite Agreement of September 5, 1961 8/28/68, p. 6:]

". . . Airlift, however, is bound by that [1961] agreement."

■ Respondent ALPA contends on the other hand, that the tripartite agreement is no longer in full force and effect, having been superseded by the Cole Awards and the 1970 ALPA–Airlift collective bargaining agreement which covered all flight crew personnel, including petitioners. The Airlift pilots were not signatories to the 1961 agreement and therefore were not bound by it. The Cole Awards took the tripartite

agreement into consideration and petitioners did not then challenge the awards, either in the courts or through established union grievance machinery.

It is clear from the Cole Awards that the interpretation pressed by petitioners was not accepted: every reference in the various awards and opinions to the tripartite agreement refers to the priority of the Slick flight engineers over former *Slick* pilots, not over Airlift pilots as well. Specifically, the Clarification Award of June 14, 1968 states:

". . . when former Slick grandfather flight engineers are assigned positions to which their position on the integrated system seniority list as such does not entitle them that this be by the process of displacing more senior former *Slick* pilots, and that it must not result in the furloughing of former Airlift pilots who have positions on the integrated system seniority list superior to those of the grandfather flight engineers. [Emphasis added.]

"In the basic award, that of the three man board, the contention of the former Slick pilots that the tripartite Slick Agreement of September 5, 1961 should be made binding on the former Airlift pilots was overruled. As between the grandfathers and the former Slick pilots the grandfathers were given preference, and a stipulated financial obligation was imposed on Airlift International as a successor to the Slick Corporation. The former Airlift pilots, however, were not required to accord to the grandfather flight engineers the same rights to which the former Slick pilots were obligated."

Further, the August 28, 1968 Supplement re the Tripartite Agreement stated that:

"It is the judgment of this arbitration board that the manner in which the tripartite agreement of September 5, 1961 has been applied is sound and fair. The parties to that agreement have been required to, and they have, observed its provisions. Likewise, as

successor employer and by virtue of its assumption of the outstanding Slick employment agreement, Airlift has been required to meet the obligations of Slick as set forth in this agreement, and in substance it has respected these obligations.

"The 15 grandfather flight engineers have been well-protected as the result of the foregoing. There are now only 227 operating flight crew jobs available and these would be filled by those on the integrated seniority list through number 265. The seniority numbers of these grandfathers fall between 278 and 320, so that but for the effect given to the tripartite agreement none would be actively employed. The fact is, however that all 15 are employed as second officers

.   .   .   .   .   .

" . . . On the question now before us, namely the manner in which the tripartite agreement shall be carried out, we are satisfied that this agreement has been fully respected and applied. These grandfathers now have the protection that has been promised them to which they are entitled, and it is being provided without ignoring the rights of the former Airlift pilots."

The above quoted sections also make clear that the Cole Boards found that the rights of the grandfathers had been adequately and fairly protected, as ordered by the CAB and the Boards themselves. Petitioners admit the CAB and the Cole Boards ordered their rights protected, but do not acknowledge that the Board also found that these directives had been fully obeyed.

The Court has found that the petitioners were represented at these hearings in the person of Harold Hedlund. Further, there were other Slick pilots at these meetings, and there is nothing in the record to show that their stance was inimical to the grandfathers' interests, despite petitioners' claims that no one was authorized to speak for the grandfathers, and that they were not represented at these hearings. At no time did the grandfathers challenge the right of the arbitrators to deal with the tripartite agreement, nor did they at that time initiate collateral action against them.

Further, on June 11, 1968, the Slick pilots (again, including petitioners) and the Airlift pilots agreed to be bound by the three-man arbitration board when it considered "how the tripartite agreement should be carried out". This agreement to be bound was signed by the Slick pilots' attorney Richard Watt who was paid by the Slick pilots (including petitioners) and not by the union ALPA. The grandfathers did not object to Watt's representation of them as members of the Slick pilots, and in fact they knowingly allowed themselves to be assessed for his fees without comment. As a result of this June agreement, the Board rendered its August 28, 1968 Supplement, dealing solely with the 1961 Agreement.

The only indication in the record of any formal action taken on behalf of the petitioners to challenge the Cole Awards is an application for reconsideration of the February 13, 1968 Award made by Slick pilots by their attorney Richard Watt. In that document the Slick pilots challenged the authority of the Board to consider the tripartite agreement at all, or to apply its interpretation of that agreement to the grandfathers' rights. Yet, during the testimony here, the petitioners have denied granting any authorization to Watt to represent them in any respect. In addition, petitioner Fielder testified that he wrote a personal letter to Mr. Cole (the arbitrator) at his home in New Jersey, protesting the situation, to which he received no reply. Other than Watt's application for reconsideration on behalf of the Slick pilots and Fielder's letter, the petitioners took no effective action to challenge the superseding of the tripartite agreement until February 12, 1970: they did not summon a Joint Grievance Board, nor, since they disavow Watt's efforts on their behalf, did *they* challenge the Cole Board's awards of 1968.

The question at issue here is whether the grandfathers have slept on their alleged rights in not availing themselves of established grievance machinery, or by not seeking to overturn the arbitration awards, or by not initiating judicial action before now. Further, since to date they still have not taken advantage of established grievance machinery the question must be raised as to whether they are properly before this Court at all.

■ Respondent ALPA contends that the Civil Aeronautics Board (CAB) has exclusive jurisdiction over labor problems, including the merging of seniority lists (a major portion of petitioners' claim herein). In view of the fact that petitioners had only informal contact with the CAB—Messrs. Nisito, Fielder, and Sanders visited the CAB in November 1971 and met with a CAB attorney —they have not really petitioned the CAB in any recognized manner. Petitioners allege that the CAB attorney, Mr. Schwarzkopf, informed them that the CAB had no jurisdiction over petitioners' "internal union dispute" and thus they made no formal application. However, this is not a sufficient explanation for the failure of the grandfathers to pursue their cause in an appropriate manner before the CAB. In Wilmer Kesinger, et al. v. Universal Airlines, et al., 474 F.2d 1127 (6th Cir. 1973) the Court stated: ". . . the CAB is not the final word concerning its own jurisdiction . . . and certainly not the final word concerning the jurisdiction of United States district courts".

The Sixth Circuit held that the only recourse open to the petitioners therein after the formal CAB refusal to reopen was to appeal the denial to the court of appeals pursuant to 49 U.S.C. § 1486 (1971), not to institute a collateral action in the district court. The fact situation in Kesinger is strikingly similar to the instant action, except that the petitioners herein never made a formal appeal to the CAB for reopening of the disputed issues. In Kesinger the petitioners were displeased with the integra-

tion of the seniority lists after the merger, claiming ALPA had promised them that the Platt Award (counterpart of the tripartite agreement) would not be disturbed, and it was. The petitioners in Kesinger also claimed that ALPA had breached its duty of fair representation.

Respondent ALPA cites other cases dealing with the exclusive jurisdiction of the CAB in these matters and the CAB's authority to itself integrate seniority lists and handle labor problems which accompany mergers. Kent v. CAB, 204 F.2d 263 (2d Cir. 1953), cert. den., 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953); Hyland v. United Air Lines, 254 F.Supp. 367 (N.D.Ill.1966); Oling v. ALPA, 346 F.2d 270 (7th Cir. 1965). The Oling case also stated that the principle is well settled that "collateral attacks upon administrative orders are not permissible".

Directing attention to the Cole Awards themselves and the avenues open to petitioners to timely challenge the arbitrators' authority to consider the tripartite agreement, the Court is mindful that basically the petitioners are asking the Court, at this late date, to overturn the effects of long and complicated labor arbitration.

■ Respondents quote from United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960) as stating the federal court's policy vis-a-vis labor arbitrations re collective bargaining agreements:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes would be undermined if the courts had final say on the merits of the awards."

This rationale is equally applicable to the situation where a federal agency such as the CAB has entrusted to neutral arbitrators the formulation and effectuation of a complicated merger involving disparate interests, factions within factions, and complex issues best

left to the expertise of labor arbitrators. The Court will not entertain the suggestion that the Cole Awards now be indirectly reviewed and in effect overturned based upon an alleged overreaching of the arbitrators' authority, when adequate opportunity to timely challenge has been ignored.

Further the current attorney for petitioners admits that if Mr. Cole did exceed his authority as an arbitrator, petitioners would have a difficult legal question as to how he did so and as to what means would be available to upset the awards. The standards to be met in order to achieve what petitioners are now seeking indirectly are no less demanding. The arbitration proceeded from an order of the CAB, under its aegis. The petitioners neither challenged the CAB nor the arbitration awards at the time they should have and could have done so in order to protect their rights. At this stage the Court cannot in effect overrule the Cole Awards and reinstate an agreement which has laid dormant since its inception, simply because the petitioners have finally taken action. This Court is not convinced by petitioners' arguments that this action (initially commenced in New York State Supreme Court in June 1971) was their first opportunity to challenge the alleged usurpation of the tripartite agreement. As stated above, the correct procedure would have been to file a timely complaint with the CAB or to challenge the arbitration, either through established union means or in court, if in fact a basis to do so was available.

■ Petitioners contend that it would have been futile for them to attempt to use the grievance machinery because ALPA and its various councils are hostile to them. They allege specific instances of hostility and threats which individual petitioners have experienced from ALPA and Airlift pilots. These events may have occurred, but they alone are not a sufficient basis for challenging the neutrality of the grievance machinery. Petitioners fail to differentiate between hostility and adverse determinations. ALPA is in a difficult position in that it represents both the majority Airlift pilots and the minority Slick pilots (the latter group includes the even smaller minority group of the 13 former flight engineers or grandfathers). If the Court were to adopt petitioners' premise that an adverse decision is a hostile one, or one in derogation of the duty of fair representation, ALPA would always violate its duties whichever way any grievance was decided, and would constantly be brought to Court by the displeased group. The required composition of the grievance boards militates against the open hostility to the grandfathers' cause which petitioners fear. At least one grandfather would sit on the System Board of Adjustment, and if no agreement were reached by the four members, a fifth neutral, Howard Gamser, would sit. This practice, if followed, does not appear to be automatically adverse to the grandfathers' interests.

■ Finally, petitioners cannot come into the district court solely on the strength of their allegation of breach of the statutory duty of fair representation. As noted above, ALPA represents all factions in this instant action, and therefore the Court agrees with the *Kesinger* decision when it stated:

"Consequently, the mere fact that the integration of a seniority list is detrimental to one group of employees, and favorable to another, does not establish that the union has breached its duty of fair representation if it has integrated the list in good faith and not on grounds totally irrelevant to seniority."

In order to establish that a breach of duty of fair representation has occurred, petitioners must demonstrate that ALPA acted with bias and hostile discrimination toward petitioners. Jackson v. TWA & ALPA, 457 F.2d 202 (2d Cir. 1972). However, nothing in the record establishes that ALPA has breached its duty of fair representation, or has even approached the above-listed standards.

## DETERMINATION OF THE COURT

Based on the foregoing, the Court has concluded that respondent ALPA signed the 1961 Tripartite Agreement on behalf of the Slick pilots; it did not sign on behalf of the Airlift pilots. The Airlift pilots are not bound by the provisions of the tripartite agreement; however, respondent Airlift is bound by its terms.

■ The arbitration awards issued in the period 1968–1970 under the auspices of the CAB did not abrogate the rights given to petitioners by the September 5, 1961 agreement. The arbitrators who participated in those arbitrations are presumed to have acted fairly and impartially, in the absence of evidence to the contrary. A special arbitration was set up to consider how the 1961 agreement could be implemented in view of the merger. The agreement establishing that special arbitration was entered into by the attorney for the Slick MEC (which also represented the instant petitioners), and that agreement provided that the ensuing arbitration would be binding on both groups. Petitioners were represented in the various proceedings which led to the 1968–1970 awards, had ample notice of their purpose, and opportunity to be heard. Petitioners did not challenge the arbitration proceedings.

Further, petitioners failed to proceed before the CAB with their claims. The CAB had exclusive jurisdiction to deal with the very issues of which petitioners are now complaining. No formal application was made by petitioners to the CAB.

Petitioners have further failed to avail themselves of the internal grievance machinery available to them either under the Joint Grievance Board (before February 1970) or the System Board of Adjustment. On the record there is no basis for assuming that the members of the System Board of Adjustment will be biased or hostile to any grievance of petitioners, particularly in light of the composition of the Board.

Petitioners are guilty of laches in the presentation of their claims.

As to the elements which petitioners must establish in order to enjoin ALPA's processing of grievances, the Court concludes:

1. Petitioners have failed to demonstrate the probability of success on the merits.

2. Petitioners would not be irreparably harmed if the injunction were not granted, although respondent Airlift might be if there were substantive claims which would have to await a trial.

3. Upon a consideration of the merits, petitioners have failed to prove the balance of equities is in their favor.

Turning to a consideration of petitioners' amended and supplemental petition, which forms the basis of their suit, the Court makes the following dispositions:

Every prayer of petitioners for injunctive relief is denied in all respects, based on the above findings and discussion.

Further, the Court dismisses the amended and supplemental petition for the following reasons:

Petitioners have not taken advantage of the internal grievance machinery afforded by ALPA and Airlift. To permit petitioners to come into the district court as the threshold forum for their complaint would be to contravene the national labor policy which promotes the settling of disputes through established grievance machinery. Only after petitioners have unsuccessfully exhausted the available internal remedies should they look elsewhere.

Further, petitioners are here seeking to have the Court in effect review the Cole arbitration awards. As stated in United Steelworkers v. Enterprise Wheel and Car Corp., this too would undermine federal labor policy if the courts had final say on the merits of these arbitration awards, particularly since petitioners did not voice any complaint during the arbitration proceedings, nor timely

attempt to set them aside in a judicial proceeding.

Finally, the Court agrees with the *Kesinger* case, *supra,* and respondent ALPA that the CAB has exclusive jurisdiction over the major portion of petitioners' petition, and no formal application to that body was made by petitioners to reopen, review, or set aside the integrated seniority list. Again, the Court is not the proper initial forum for these matters, and the petitioners should have petitioned the CAB and not instituted a suit in district court to air their grievances for the first time.

The foregoing shall constitute the Court's findings of fact and conclusions of law, and they render moot any outstanding motions of petitioners with regard to respondents' answers filed to the amended and supplemental petition.

So ordered.