**AIR LINE EMPLOYEES ASSOCIATION,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Allegheny Airlines, Inc., Intervenor.

No. 22243.

United States Court of Appeals
District of Columbia Circuit.

Argued March 25, 1969.

Decided May 2, 1969.

Mr. George Kaufmann, Washington, D. C., for petitioner.

Mr. J. Michael Roach, Atty., Civil Aeronautics Board, with whom Messrs. Joseph B. Goldman, General Counsel, O. D. Ozment, Deputy General Counsel, Warren L. Sharfman, Associate General Counsel, Litigation and Research, and Gilbert Amyot, Atty., Civil Aeronautics Board, and Howard E. Shapiro, Atty., Department of Justice, were on the brief, for respondent.

Mr. William J. Curtin, Washington, D. C., with whom Messrs. Edwin I. Colodny and Robert J. Hickey, Washington, D. C., were on the brief, for intervenor.

Before BURGER, WRIGHT and LEVEN-THAL, Circuit Judges.

PER CURIAM:

This petition challenges an order of the Civil Aeronautics Board approving the merger of Lake Central Airlines into Allegheny Airlines. Petitioner, the Airline Employees Association (ALEA), argues that Allegheny was required by law to assume some or all of the terms of Lake Central's collective agreement with ALEA, and that the Board's refusal to require assumption of the agreement as a condition of the merger vitiates its order of approval. We find that the Board has not abused its broad authority to approve airline mergers consistent with the public interest.[1]

Before the merger, Lake Central had about 400 passenger service employees, whom ALEA represented under a collective agreement with Lake Central. Alle-

gheny's 1100 to 1200 employees in the same craft or class were unrepresented. The merger thus created a unit of some 1500 to 1600 employees, about one fourth of whom had been represented by ALEA.

Allegheny took the position that it would not, after the merger, recognize ALEA as the bargaining representative of the 400 former Lake Central employees, nor would it consider itself bound by the terms and conditions of the ALEA-Lake Central contract. In Allegheny's view, it would have violated the Railway Labor Act if it had assumed the Lake Central-ALEA collective agreement. In the terms of the merger agreement, Allegheny did agree to accept the labor protective provisions which the Board had in the past insisted upon as a condition for approving airline mergers.

The labor protective provisions, set forth by the Board in its decision in the United-Capital Merger Case, 33 C.A.B. 307, 342-347 (1961), provide generally that employees shall be no worse off after a merger than before, that costs to employees arising out of the merger shall be paid by the company, and that where employees are dismissed because of the merger, "dismissal allowances" shall be paid to them based upon their seniority. The provisions further permit arbitration of disputes arising out of the application of their terms at the request of either party.

ALEA contends that the labor protective provisions were insufficient, and that under the doctrine of John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L.Ed.2d 898 (1964), Allegheny as the successor corporation was

---

1. The Federal Aviation Act forbids airline mergers unless approved by the Board, 49 U.S.C. § 1378(a) (1) (1964), and provides that:

   "* * * Unless * * * the Board finds that the consolidation, merger, purchase, lease, operating contract, or acquisition of control will not be consistent with the public interest or that the conditions of this section

will not be fulfilled, it shall by order approve such consolidation, merger, purchase, lease, operating contract, or acquisition of control, upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe[.] * * *"

49 U.S.C. § 1378(b) (1964).

bound by the collective agreements adopted by the merged corporation, Lake Central. Alternatively, and hewing more closely to *Wiley*, ALEA contends that Allegheny must at least arbitrate the extent of the survival of the ALEA-Lake Central agreement, under the arbitration clause in that agreement.[2]

The trial examiner, whose decision the Board declined to review and hence adopted as its own,[3] held that the labor protective provisions sufficiently protected the former Lake Central employees to render the merger consistent with the public interest. In his view, the Civil Aeronautics Board was not the proper forum in which to apply the subtleties of the *Wiley* doctrine to this merger. Insofar as any dispute existed over the representational rights of ALEA with respect to some or all of the passenger service employees in the merged unit, such a dispute was within the exclusive jurisdiction of the National Mediation Board under Section 2, Ninth, of the Railway Labor Act.[4] Insofar as there was a dispute over the possible survival of some terms of the ALEA-Lake Central collective agreement, based upon principles of the law of contracts generally or of labor contracts in particular, such a dispute

could be resolved by suit in an appropriate court.

In the examiner's view, the Board's responsibility was confined to determining that the public interest—including as one component the interest of affected employees—was served by the merger. He found that the employees were adequately protected. Allegheny had adopted the labor protective provisions. It proposed to pay its passenger service employees—including the former Lake Central employees—more than Lake Central had paid under its agreement with ALEA. Indeed, the examiner found:

> " * * * In no case does the record disclose that the merger will result in any economic injury to any of the employees of either company. * * * No furloughs of personnel are presently contemplated, and it is anticipated that normal attrition, reassignment, and growth will permit the absorption of any surplus employees which may result."

We agree with the approach taken by the examiner, whose opinion was adopted by the Board through its decision not to grant discretionary review. The Board's duty is to impose upon airline mergers such conditions as will make them consistent with the public interest.[5] It has properly regard-

2. In *Wiley*, the union had a collective agreement, including an arbitration clause, with Interscience, which was merged into Wiley. Noting "the central role of arbitration in effectuating national labor policy," 376 U.S. at 549, 84 S.Ct. at 914, the Supreme Court held that the arbitration clause in the Interscience contract was binding on Wiley, the successor corporation. In that case as in this one, the relevant employees of the larger corporation were unrepresented, so that the union represented a minority of employees within the merged unit.

3. Under Reorganization Plan No. 3, 49 U.S.C. § 1324 (1964), the Board is granted power to delegate any of its functions to a hearing examiner, retaining a right of discretionary review over the actions of such delegates. Where discretionary review is declined or not

sought, the action of the delegate becomes the action of the Board.

4. In this respect he followed Brotherhood of Railway & Steamship Clerks v. United Air Lines, Inc., 6 Cir., 325 F.2d 576 (1963), cert. dismissed as improvidently granted, 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964). The National Mediation Board, of course, has jurisdiction to decide only representational disputes "among a carrier's employees as to who are the representatives of such employees." 45 U.S.C. § 152, Ninth (1964). Thus there may exist under the Railway Labor Act disputes relating to representation which no official body has the power to resolve. *See* Brotherhood of Locomotive Firemen & Enginemen v. National Mediation Board. 133 U.S.App.D.C. 326, 410 F.2d 1025 (1969).

5. *See* Note 1, *supra*.

ed the protection of employee interests as part of that duty. It has not thereby transformed itself into a labor board or labor contract court, bound to pass on every question of labor law which might arise out of a merger—any more than it sits to determine all merger-related questions of tax, securities or corporation law, state or federal.

■ On the Board's undisputed findings of fact, the merger here in question has benefited or left unharmed all affected employees. Under these circumstances, we find no reason to disturb the Board's conclusion that the merger, with respect to its effect upon passenger service employees, is consistent with the public interest.[6]

■■ In affirming the Board on the merits, we have not considered the argument that ALEA failed to exhaust its administrative remedies.[7] We do not lightly pass over jurisdictional questions, but our power to do so is clear where, as here, we reach the same result which a successful challenge to our jurisdiction would have achieved.[8] Where, again as here, the decision for which review is sought is clearly right on the merits, and when resolution of the question involved appears to be of some public importance, we feel justified in exercising that power in the absence of clear lack of jurisdiction.

Petition denied.

6. ALEA originally contended that the Board erred in its allocation of burden of proof in disputes arising under one provision of the labor protective provisions, but the Board's clarification of its opinion in its brief in this case has led ALEA to abandon this challenge.

7. ALEA made the claim pressed here before the trial examiner, but did not seek discretionary review with the Board. Reorganization Plan No. 3, *supra* Note 3, § 1(c), provides that where discretionary review is not sought, or is denied, the examiner's decision "shall, for all purposes, including appeal or review thereof, be deemed to be the action of the Board." The Board urges that, despite this language, a party must still seek discre-

tionary review from the Board before it can take an appeal to the courts.

Even if the Board is correct in this contention, it still would not follow that we lack jurisdiction. Although ALEA did not seek discretionary review, another union, the Airline Dispatchers Association, did seek such review and it was denied. ALEA contends that exhaustion of remedies by one party preserves the right of court review for a similarly situated party. *See* City of Pittsburgh v. Federal Power Commission, 99 U.S.App. D.C. 113, 237 F.2d 741 (1956).

8. Pan American World Airways, Inc. v. C. A. B., 129 U.S.App.D.C. · 159, 392 F.2d 483 (1968).