506 F.2d 97
 87 L.R.R.M. (BNA) 2056, 165 U.S.App.D.C. 36
 NORTHEAST MASTER EXECUTIVE COUNCIL, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent, Air Line Pilots
Association International et al., Intervenors.
W. Peter CAREY et al., Appellants,
v.
J. J. O'DONNELL (President of Air Line Pilots Association) et al.
George S. CHAUDOIN et al., Appellants,
v.
AIR LINE PILOTS ASSOCIATION et al.
 Nos. 73-1595, 73-1608 and 73-1783.
 United States Court of Appeals, District of Columbia Circuit.
 Argued April 18, 1974.
Decided Aug. 19, 1974
Certiorari Denied Jan. 13, 1975
See 95 S.Ct. 783.
 
 Walter J. Smith, Jr., Washington, D.C., with whom J. Gordon Forester, Jr., and Robert S. Perkins, Washington, D.C., were on the brief, for petitioner.
 Joan Marie Frankel, Atty., Civil Aeronautics Board, with whom Richard Littell, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Robert L. Toomey, Asst. Chief, Litigation and Research, Civil Aeronautics Board, and Carl D. Lawson, Atty., Dept. of Justice, were on the brief, for respondent.
 Frank F. Rox, Atlanta, Ga., and Robert Reed Gray, Washington, D.C., were on the brief for intervenor Delta Air Lines, Inc.
 Gary Green, Washington, D.C., was on the brief for intervenor Air Line Pilots Association, International.
 W. D. Deakins, Jr., Houston, Tex., and Richard F. Watt, Chicago, Ill., were on the brief for intervenor Delta Master Executive Council.
 Before EDWARDS,* Circuit Judge for the Sixth Circuit, and TAMM and WILKEY, Circuit Judges.
 WILKEY, Circuit Judge:
 
 
 1
 This case comes to us on petition for review of a Civil Aeronautics Board order arising out of the merger between Delta Air Lines, Inc., and Northeast Airlines, Inc., brought by the Northeast Master Executive Council, representing the flight deck officers (pilots and navigators) formerly employed by Northeast and since the merger employed by Delta. Following the merger, the Master Executive Council filed a petition with the Board challenging the integrated seniority list of pilots of Delta, the merged surviving airline. The Board's order[1] dismissing this petition and a subsequent petition for reconsideration is the subject of our review. Finding no error in the Board's proceedings, we decline to vacate its order.
 
 
 2
 I. PROCEEDINGS BEFORE THE BOARD AND THE UNITED STATES DISTRICT COURT
 
 A. Background
 
 3
 On 24 April 1972 the Civil Aeronautics Board approved[2] a merger between Delta Air Lines, Inc., and Northeast Airlines, Inc., subject to certain 'labor protective provisions' imposed by the Board for the protection of the employees of both companies who might be adversely affected by the merger.[3] In addition the Board reserved jurisdiction 'to make such amendments, modifications, and additions to the labor protective conditions . . . as the circumstances may require . . ..'[4]
 
 
 4
 At all pertinent times the Air Line Pilots Association ('ALPA') was the certified bargaining representative for employees of both airlines. Pursuant to ALPA's internal procedure for seniority integration,[5] the Master Executive Councils ('MEC's')[6] of Delta and Northeast each designated two merger representatives for the purpose of arriving at a single integrated seniority list. When on 5 June 1972 the negotiations culminated in agreement between the merger representatives, ALPA transmitted the list for acceptance by Delta, the surviving airline. By agreement of 26 October 1972 Delta agreed to modify its existing collective bargaining agreement with ALPA so as to implement the new list.
 
 
 5
 Shortly after its publication, however, the Northeast MEC sought to repudiate the list. ALPA president O'Donnell declined pleas to reject the list and explained that since the merger representatives, not the MEC's, had been delegated complete authority under ALPA merger policy to compile a merged list, no authority existed in either MEC to alter its terms once the merger representatives reached an accord.
 
 B. Proceedings in District Court
 
 6
 The disgruntled Northeast pilots filed three separate actions in District Court in an effort to set aside the integrated list. In Northeast Pilots Master Executive Council v. O'Donnell and ALPA,[7] the Northeast MEC sought 'on its own behalf and on behalf of more than 540 pilots which it represents' to enjoin ALPA from executing an agreement with Delta incorporating or acknowledging the integrated seniority list. The pilots' central argument was that the merger representatives had exceeded the scope of their authority and that the resulting agreement was violative of the Railway Labor Act[8] 'in that it purports to eliminate the right of any aggrieved pilot or group of pilots to petition for a hearing before the System Board of Adjustment as provided by 45 U.S.C.A. sec. 184.' Citing Hyland v. United Air Lines, Inc.,[9] the District Court dismissed the action, holding that exclusive jurisdiction over the controversy lay with the Civil Aeronautics Board. No appeal was taken.
 
 
 7
 A second suit, W. Peter Carey, et al. v. J. J. O'Donnell and ALPA,[10] was filed in District Court on 2 April 1973 by five named plaintiffs 'on their own behalf and on behalf of more than 540 former Northeast pilots who are now employed by Delta Air Lines, Inc.' Again the District Court held that the Board had exclusive jurisdiction and dismissed the action.
 
 
 8
 A third action, George S. Chaudoin, et al. v. ALPA and Delta Air Lines, Inc.,[11] filed 19 April 1973 as a class action on behalf of former employees of Northeast Airlines, Inc., was dismissed as barred by res judicata and collateral estoppel.
 
 
 9
 The Carey and Chaudoin dismissals were appealed to this court, were consolidated for our consideration, and are treated together in the appended opinion of this date.
 
 
 10
 C. Proceedings Before the Civil Aeronautics Board
 
 
 11
 On 4 October 1972, after unsuccessful efforts in District Court, the Northeast MEC filed with the Board a Petition for the Exercise of Reserved Jurisdiction. The MEC alleged that the '540 flight deck officers represented by NE MEC will soon have imposed upon them an integrated seniority list that is not fair and equitable.' The Board dismissed the petition:
 
 
 12
 In sum, it has been, and continues to be, our view that absent a showing of bad faith, the adoption by a carrier of an integrated seniority list proposed by the collective bargaining representatives of the employees involved amounts to the carrier having made 'provisions . . . for the integration of seniority lists in a fair and equitable manner' within the meaning of section 3 of the Board's labor protective provisions.[12]
 
 
 13
 Northeast M.E.C. filed the instant petition to review the Board's order.
 
 II. THE BOARD'S RESPONSIBILITY
 
 14
 Jurisdiction of the Civil Aeronautics Board over matters of airline merger, including the fair and equitable integration of seniority lists, is well established.[13] We recognized in another context the Board's 'broad authority to approve airline mergers consistent with the public interest.'[14] If, as we hold today in the companion cases,[15] the Board is vested with exclusive jurisdiction over these matters, we must insure by our direct review[16] that that jurisdiction is exercised in a manner that vindicates the policies underlying this and other arguably pertinent statutory provisions.[17]
 
 
 15
 Consequently, the Board is charged with the ultimate responsibility of insuring that a fair, just, and equitable solution is reached with respect to the integration of seniority lists as well as all other aspects of the merger it approves. To the extent that the Board relies upon negotiations among the parties most vitally interested, i.e., the pilots, this is recognition of a practical means to reach a result meeting the statutory standard, but delegation cannot relieve the Board of its statutorily imposed ultimate responsibility. Hence we would not hesitate to reverse if we were not satisfied that the Board had discharged this responsibility faithfully. However, on the record before us we conclude that the action below must be affirmed.
 
 III. THE ALPA PROCEDURES EMPLOYED
 
 16
 Faced with the difficulties inherent in the fair and equitable resolution of seniority problems, and recognizing that such problems lend themselves readily to solution by negotiation and voluntary agreement, the Board in the Monarch-Challenger Merger Case[18] established the policy of noninterference with private negotiations between affected pilot groups on matters of seniority integration. Although the Board was later forced to decide such questions itself in the North Atlantic Route Transfer Case,[19] it later warned that its action there was 'not to be construed as any departure from the declaration first made . . . in (Monarch-Challenger) that the integration of seniority of employees of merging operations should, if possible, be left to voluntary agreement . . ..'[20] Thereafter, the Board has consistently adhered to the Monarch-Challenger policy.[21] In view of the many considerations necessarily involved in the assimilation of a fair and equitable integrated seniority list, we recognize the wisdom on several practical grounds of leaving such considerations to the employees' freely chosen representatives for original negotiation.
 
 
 17
 In the instant case negotiations between the Delta pilots and the incoming Northeast pilots were governed by ALPA's Merger Policy.[22] Under this procedure, when the president of ALPA believes a merger to be imminent, he notifies the affected MEC's and directs them to meet and to activate ALPA Merger Policy and Procedures. The president then determines by ballot among the affected flight deck operating crew members their choice between two methods for compilation of a merged seniority list. Method #1 provides for a list compiled 'solely on the basis of length of service,' while Method #2 takes into account 'problems and factors peculiar to the merger, using length of service as a primary guide or reference point . . ..'[23] The majority of votes cast for either method governs for each respective airline, but where different airline pilot groups have elected dissimilar methods, the list is compiled in accordance with Method #2. Method #2 was decreed in the instant case because the two pilot groups split, Northeast pilots preferring #1 and Delta pilots opting for #2.
 
 
 18
 Continuing with the prescribed procedure, MEC-appointed committees compute current seniority lists for each airline and entertain challenges thereto. Within 10 days after Board approval of the merger, each MEC meets and elects two representatives vested with plenary authority to act for their respective flight deck crew members.[24] The merger representatives then 'by direct negotiation reconcile all their differences as to method of integration and compile the single acceptable flight deck operating crew member seniority list.'[25] Although progress reports are to be made every five days to the president of ALPA,[26] no provision exists for apprising the respective MEC's of the progress of negotiations. If no agreement is reached within 75 days of Board approval of the merger, the matter is submitted to arbitration for final resolution.
 
 
 19
 Conceding that its attack on the integrated list concerns 'procedural irregularities that fall short of directly violating . . . ALPA Merger Policy,'[27] petitioner first contends that 'the certified representatives of the Northeast pilots kept the details of the negotiations leading up to the merged list a secret from the pilots they represent, even after the agreement had been signed.'[28] Of course, the very nature of such negotiations requires that they be attended by a certain degree of confidentiality. More significantly, however, the merger representatives were freely chosen by the respective MEC's, who ostensibly could have revoked their authority at any time.[29] Moreover, petitioner concedes that it was aware as early as 28 January 1972 that the merger representatives would not reveal any details of the negotiations. Yet the negotiations continued until formal execution of the agreement on 1 June 1972, and it was not until 26 days later that petitioner met in special session to 'repudiate' the merged list. In light of these factors, coupled with petitioner's failure to allege bad faith on the part of the merger representatives, we are not convinced that the secret nature of the negotiations inhibited the compilation of a fair and equitable list.
 
 
 20
 Petitioner next argues that by failing to follow its instructions to seek a merged list based solely upon length of service, the merger representatives exceded the scope of their authority.[30] But the simple answer to this is that ALPA merger policy on the method to be used is to the contrary, and there was nothing that either the merger representatives or the MEC could have done to change it. The merger policy not only provides that the MEC's 'will certify these representatives as having complete and full authority to act for and in behalf of the flight deck operating crew members,'[31] thus proscribing any attempt by the MEC's to limit their representatives' authority, it also provided in this case for the use of Method #2 in the compilation of the merged list, thus rendering nugatory petitioner's effort to instruct its representatives to use Method #1.
 
 
 21
 Outland v. CAB,[32] involving the merger between Delta Airlines and C & S Air Lines, arose out of a factual context nearly identical to the case at bar.[33] The complaining pilots' petition before the Board was dismissed, the Board refusing to disturb the negotiated result absent a failure to negotiate or a claim of bad faith. On direct appeal we affirmed:
 
 
 22
 The Board would be placed in the position of dealing with issues not directly within its competence if it undertook to resolve conflicting claims on the interpretation of procedures established by collective bargaining agreements. The Board's experience and expertise is with transportation not labor relations problems.[34]
 
 
 23
 That reasoning is equally appropriate to the facts before us.
 
 
 24
 Finally, petitioner argues that its members voted to requdiate the final agreement and should therefore not be bound by its terms. Petitioner attempts to find support in Outland, supra, where we noted that the integrated seniority list was approved by the merging carriers' respective MEC's. However, MEC approval vel non was not necessary to our determination of the issue in Outland. Additionally, as we indicate above, the ALPA policy in effect during the negotiations at issue in this case did not require (nor provide for) such MEC approval; the merger representatives were vested with complete and full authority. Moreover, ALPA, not the MEC (merely an administrative arm of ALPA), was the sole bargaining agent for the pilots. Only ALPA was authorized to negotiate a bargaining agreement with the surviving carrier.
 
 
 25
 In sum, we conclude that petitioner has failed to demonstrate any irregularity in the ALPA procedures followed below which would justify a conclusion that the final integrated seniority list was not compiled in a fair and equitable manner. We turn now to a consideration of petitioner's charges that the list is substantively defective.
 
 
 26
 IV. THE 'FAIR AND EQUITABLE' INTEGRATED SENIORITY LIST
 
 
 27
 By its order of 24 April 1972 the Board ordered that provision be made for the integration of existing seniority lists 'in a fair and equitable manner . . ..'[35] The problems of compiling a seniority list for any given employee population are compounded when two previously established lists must then be integrated. Petitioner's desire to rely heavily on length of service is shortsighted in view of the many other significant factors contributing to the fair and equitable integration of any seniority list.[36]
 
 
 28
 In addition to length of service or age, experience, especially among airline pilots, is vitally important. Not only does equipment vary in size and technical sophistication from airline to airline, so do route structures. Five years' experience on one airline may be the equivalent, for example, of only three years' on an airline with larger and more complicated equipment or different route structures. Furthermore, Northeast was a failing airline, and its personnel being absorbed by the surviving carrier could naturally be expected to adapt to the Delta scheme rather than require Delta to rearrange its operations to accommodate the new pilots.[37] Other important considerations include past hiring practices and relative prospects for continued employment and advancement at Delta and Northeast absent the merger.
 
 
 29
 The mention of Northeast being a failing airline emphasizes the significance (and wisdom) of this integrated seniority list being produced by negotiation. Obviously, if Northeast had been allowed to fail and cease operations, its pilots would largely have been reemployed by other airlines taking over Northeast routes. The Northeast pilots reemployed, however, would not have joined another airline carrying their total seniority from Northeast. The former Northeast pilots may not necessarily have gone to the bottom of their new airline seniority lists, but to the extent each achieved a position higher on the ladder, it would have been as a result of individual negotiation.
 
 
 30
 And so here, to the extent any former Northeast pilot was ranked higher on Delta's integrated list than previously employed Delta pilots, those Delta pilots were dropped a notch in seniority to make room for the Northeast pilots. Hence, negotiation among those most directly affected, by those most knowledgeable of respective pilot qualifications, was a proper way to compile the integrated list. Petitioner itself has recognized in another context the complexity of the problem with which the Board was faced in arriving at an equitable result.[38] We likewise are impressed that the problem has no facile solution and, accordingly, defer to the negotiated result.
 
 V. CONCLUSION
 
 31
 Section 408 of the Federal Aviation Act of 1958[39] vests the Civil Aeronautics Board with jurisdiction to hear and approve mergers between air carriers. Our jurisdiction to review the Board's order is limited.[40] On the record before us, however, we find the Board's action in refusing to look behind the freely negotiated list to be wholly consistent with its obligations under the Act. Finding no reason to upset the Board's order, it is accordingly
 
 
 32
 Affirmed.
 
 APPENDIX A
 SECTION XII
 MERGERS, INTERCHANGE PROTECTIVE PROVISIONS
 Merger Policy and Procedures
 I-- Notice of Merger
 
 33
 (a) When, in the opinion of the President of the Association, a merger or consolidation of air lines or parts thereof appears imminent, it will be his responsibility to notify the Master Executive Council of each affected air line that, in accordance with Association procedure, it is their responsibility as representatives of the affected flight deck operating crew members to meet and activate the Association procedures for settling their seniority merger problems.
 
 
 34
 (b) The President will cause a ballot to be circulated among the flight deck operating crew members of the Association on the current seniority lists of the affected air lines, offering a choice between:
 
 
 35
 Method #i-- Compilation of a merged list solely on the basis of length of service as a flight deck operating crew member without disturbing any individual's relative position on his seniority list.
 
 
 36
 Method #2-- Compilation of a merged list on the basis of problems and factors peculiar to the merger, using length of service as a primary guide or reference point without disturbing any individual's relative position on his seniority list.
 
 
 37
 (c) In tabulating the results, a majority of the votes cast for either Method #1 or Method #2 shall govern for the respective air lines.
 
 
 38
 (d) In mergers involving air lines whose pilots have elected dissimilar methods of integration, the compilation of an integrated seniority lost shall be accomplished in accordance with the principles outlined in Method #2.
 
 II-- Computation of Length of Service
 
 39
 (a) The Master Executive Council of each of the affected air lines will, prior to the date of Government approval, appoint a committee to investigate and compute the cumulative length of service of each flight deck operating crew member on its current seniority list, utilizing all available records. These findings will be compiled and held in abeyance until date of Government approval, at which time the committee will immediately forward on an appropriate Home Office form by registered or certified mail, to each flight deck operating crew member individually, a statement of their findings and request confirmation of the length of service they have accredited to the individual flight operating crew member.
 
 
 40
 (b) The computation of such length of service shall be based solely on the date a flight deck operating crew member was hired for the purpose of eventually performing the duties of a pilot, as substantiated by company payroll records and other records. Periods of service other than as a flight deck operating crew member shall not be considered in the computation of length of service. Furlough time shall not be credited in the computation of length of service, except that for the purpose of this section, furlough time directly resulting from labor disputes shall not be deducted. Furlough time may be credited in the computation of length of service in whole or in part if mutually agreed upon by the duly authorized merger representatives.
 
 
 41
 (c) It will be the responsibility of the individual flight deck operating crew member to challenge and to prove his protest by a written statement of fact and relevant evidence within 30 days after the length of service statement is mailed.
 
 
 42
 (d) The committee will receive and evaluate the protests and will adjudge the validity of the claims. Its decision will be final.
 
 III-- Compilation of a Merged List
 
 43
 (a) Within ten days from the date of Government approval of the merger, the Master Executive Councils of the affected air lines shall meet and elect two representatives from their respective seniority lists. The Master Executive Councils will certify these representatives as having complete and full authority to act for and in behalf of the flight deck operating crew members of their respective air line for the purpose of compiling a single flight deck operating crew member seniority list.
 
 
 44
 (b) Each committee will at this time submit its seniority list with the length of service computations to the duly authorized merger representatives for use in compiling an integrated list. If the respective merger representatives, after reviewing the length of service credit for each affected air line group, disagree as to the computation of the length of service credit, they shall be empowered to compromise their differences to the extent necessary to reach agreement, except that the relative position of the flight deck operating crew members on their respective seniority lists will be maintained. Failing this, the disagreement shall be resolved by utilizing the mediation or arbitration procedures which follow, regardless of the method by which the lists are finally integrated.
 
 
 45
 (c) The merger representatives of the affected air lines shall meet at the Home Office within thirty days from the said date of the Government approval and by direct negotiation reconcile all their differences as to method of integration and compile the single acceptable flight deck operating crew member seniority list. The representatives shall report at least every five days to the President of the Association on their progress in direct negotiation. If, at any time after receiving the first report, in the opinion of the President, satisfactory progress is not being made, he shall unilaterally intervene and invoke mediation.
 
 
 46
 (d) The Mediator shall be the President of the Association or an appointee of the President of the Association. Said appointee may be an Association officer, or Home Office staff member who has been relieved of all other Association duty during mediation sessions.
 
 IV-- Arbitration
 
 47
 (a) If within seventy-five days from the said date of Government approval, negotiations and mediation have not resulted in an integrated flight deck operating crew member seniority list, arbitration shall be mandatory, and such arbitration, except as specifically provided herein shall be conducted in accordance with the Arbitration Act of the State of Illinois as amended.
 
 
 48
 (b) The Executive Committee shall select and maintain a current master list comprised of 50 Association members who have consented to serve as members of a seniority integration Arbitration Board.
 
 
 49
 (c) The Arbitration Board shall be composed of three persons, two of whom shall be Association members selected from a master list by the merger representatives. Failing to agree on such two Association members of the Arbitration Board within 80 days from date of Government approval, the merger representatives will elect these members by alternately striking a name from the master list until two are left.
 
 
 50
 (d) The third member of the Arbitration Board shall be selected by mutual agreement of the representatives, or if unable to agree within 80 days from said date of Government approval, the President of the Association will invoke the services of the National Mediation Board to designate such third Board member.
 
 
 51
 (e) The Arbitration Board shall convene at the Home Office not later than 105 days from the said date of Government approval of the merger except that the President of the Association may, at his discretion, extend this time limit an additional fifteen days.
 
 
 52
 (f) The respective pilot Master Executive Councils from the affected air lines shall be charged with the presentations of their contentions regarding the merger and integration of the pilot seniority lists before the Arbitration Board, and shall present such contentions by oral or written evidence as they shall deem advisable.
 
 
 53
 (g) Only members of the Arbitration Board shall participate in executive sessions of the Arbitration Board. A majority vote will decide the issues and the decisions shall be made and written in an executive session of the Arbitration Board.
 
 
 54
 (h) The decision shall be issued not later than 60 days after convening of this Board and shall be final and binding on all parties to this arbitration proceeding.
 
 V-- Implementation
 
 55
 (a) Concurrent with merger procedures, the Master Executive Councils shall each appoint two members to a joint negotiating committee. The Master Chairmen of the respective air lines shall be ex-officio members of such committee.
 
 
 56
 (b) The President shall closely monitor preparation of the opening letter and all attendant problem areas and shall, if necessary, appoint a Chairman of the joint negotiating committee.
 
 
 57
 (c) In the event unresolved opening issues remain, the President of the Association will call a meeting of the joint negotiating committee within thirty days following the receipt by the Association of a completed seniority list for the purpose of resolving these issues.
 
 
 58
 (d) Where a duplication of Councils exists, the Executive Committee shall conduct a special Local Executive Council election within thirty (30) days after the signing of the merged working agreement. The Council identity of the combined Local Councils shall be the lowest designated number of the former Councils.
 
 
 59
 (e) Within forty-five days following the completion of the agreement, the President of the Association shall call an MEC meeting for the purpose of electing MEC officers. The President or his designee shall conduct such meeting and election.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 291(a)
 
 
 [1]
 Order No. 73-1-24 (dismissing Petition for Exercise of Reserved Jurisdiction) and Order No. 73-4-18 (denying Petition for Reconsideration)
 
 
 [2]
 Orders Nos. 72-5-73 and 72-5-74, Docket 23315. The orders were served 19 May 1972
 
 
 [3]
 Specifically, section 3 of those provisions directed in relevant part that
 provisions shall be made for the integration of (the previously separate Delta and Northeast) seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected.
 Joint Appendix (hereafter App.) at 6.
 
 
 [4]
 App. at 5
 
 
 [5]
 See note 22 infra
 
 
 [6]
 ALPA's constitution and by-laws establish a 'Master Executive Council' as the administrative arm at each airline whose flight deck officers are represented by ALPA. Each ALPA flight deck officer group elects its own MEC on an airline-by-airline basis. App. at 174
 
 
 [7]
 Civil No. 1911-72 (D.D.C., 4 October 1972)
 
 
 [8]
 45 U.S.C. 151 et seq
 
 
 [9]
 254 F.Supp. 367 (N.D.Ill.1966)
 
 
 [10]
 Civil No. 609-73
 
 
 [11]
 Civil No. 752-73
 
 
 [12]
 App. at 178
 
 
 [13]
 Outland v. CAB, 109 U.S.App.D.C. 90, 284 F.2d 224 (1960); Kesinger v. Universal Airlines, Inc., 474 F.2d 1127 (6th Cir. 1973); American Airlines, Inc. v. CAB, 445 F.2d 891 (2nd Cir. 1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 674, 681, 30 L.Ed.2d 663 (1972); Oling v. Air Line Pilots Ass'n, 346 F.2d 270 (7th Cir. 1965), cert. denied, 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965); Kent v. CAB, 204 F.2d 263 (2nd Cir. 1953), cert. denied, 346 U.S. 826, 74 S.Ct. 46, 98 L.Ed. 351 (1953)
 
 
 [14]
 Air Line Employees Ass'n v. CAB, 134 U.S.App.D.C. 185, 186, 413 F.2d 1092, 1093 (1969)
 
 
 [15]
 W. Peter Carey, et al. v. J. J. O'Donnell, et al., No. 73-1608; George S. Chaudoin, et al. v. Air Line Pilots Association, et al., No. 73-1783
 
 
 [16]
 See 49 U.S.C. 1486
 
 
 [17]
 The causes of action under Carey and Chaudoin were asserted to arise under the Railway Labor Act (45 U.S.C. 151 et seq.) and the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), respectively
 
 
 [18]
 11 C.A.B. 33 (1949)
 
 
 [19]
 12 C.A.B. 124 (1950). The parties could not reach a voluntary agreement and refused to arbitrate
 
 
 [20]
 14 C.A.B. 910, 914 (1951)
 
 
 [21]
 See, e.g., Braniff-Mid-Continent Merger Case, 15 C.A.B. 708 (1952); Delta-Chicago and Southern Merger Case, 16 C.A.B. 647 (1952); Flying Tiger-Slick Merger Case, 18 C.A.B. 326 (1954)
 
 
 [22]
 Section XII, Mergers, Interchange Protective Provisions, see Appendix A
 
 
 [23]
 Section XII, I(b)
 
 
 [24]
 Section XII, III(a) provides in relevant part:
 The Master Executive Councils will certify these representatives as having complete and full authority to act for and in behalf of the flight deck operating crew members of their respective air line for the purpose of compiling a single flight deck operating crew member seniority list.
 
 
 [25]
 Section XII, III(c)
 
 
 [26]
 Section XII, III(c)
 
 
 [27]
 Petitioner's Brief at 11
 
 
 [28]
 Id. at 8
 
 
 [29]
 See Letter from J. J. O'Donnell to Captain M. Joseph Sheehan, 1 August 1972. App. at 172, 173
 
 
 [30]
 Petitioner's statement in this regard is self-contradicting:
 The complete and full authority given to the Northeast merger representatives by the NE MEC was limited by the instructions to these representatives to employ a particular method in compiling the integrated list.
 App. at 21. Obviously the representatives were either given 'complete and full authority' as required by ALPA procedure, in which event any countermanding instruction would be ineffective, or the MEC attempted to limit their representatives' authority contrary to express ALPA policy concerning the particular method to be used in compiling the list. In either event the limiting instruction would have no effect.
 
 
 [31]
 Section XII, III(a)
 
 
 [32]
 109 U.S.App.D.C. 90, 284 F.2d 224 (1960)
 
 
 [33]
 The Board had approved the merger in the Delta-Chicago and Southern Merger Case, 16 C.A.B. 647 (1952), subject to the same labor protective provisions which we consider today. ALPA policy and procedure had been followed in the same manner as in the case at bar with the exception that, as we noted earlier, the respective MEC's had approved the integrated list
 
 
 [34]
 109 U.S.App.D.C. at 94, 284 F.2d at 228. But see Kesinger v. Universal Airlines, Inc., 474 F.2d 1127, 1132 (6th Cir. 1973) (dictum)
 
 
 [35]
 See note 3 supra
 
 
 [36]
 'The contention that length of service should control or even that it should always be the dominant factor in seniority is not consistent with experience nor with judicial attitudes toward the subject . . .. Seniority is a matter of negotiation in the first instance and when confronted with the problem, the courts have recognized that factors other than time in service are also important. No general rules can or need be laid down.' 109 U.S.App.D.C. at 94, 284 F.2d at 228
 
 
 [37]
 It is significant in this regard to note that Delta pilots outnumbered Northeast pilots four to one. Petitioner's Brief at 5, n. 1
 
 
 [38]
 See MEC NEWSLETTER, Northeast (20 May 1970). App. at 89, 91-92
 
 
 [39]
 49 U.S.C. 1378
 
 
 [40]
 49 U.S.C. 1486(e) provides:
 The findings of facts by the Board or Administrator, if supported by substantial evidence, shall be conclusive. No objection to an order of the Board or Administrator shall be considered by the court unless such objection shall have been urged before the Board or Administrator or, if it was not so urged, unless there were reasonable grounds for failure to do so.